Argued and submitted September 8, affirmed in part and reversed in part as to the
Court of Appeals and remanded for resentencing December 9, 1981

## STATE OF OREGON,
*Petitioner,*

*v.*

## VIRGIL EUGENE DILLON,
*Respondent.*

(TC 10-80-01096, CA 18267, SC 27827)

637 P2d 602

David B. Frohnmayer, Attorney General, Salem, argued the cause for petitioner. With him on the petition were William F. Gary, Solicitor General, and Richard David Wasserman, Assistant Attorney General, Salem. On the brief were James M. Brown, Attorney General, John R. McCulloch, Jr., Solicitor General, William F. Gary, Deputy Solicitor General, and John C. Bradley, Assistant Attorney General, Salem.

John Daugirda, Deputy Public Defender, Salem, argued the cause for respondent. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Before Denecke, Chief Justice, and Tongue, Lent, Linde, Peterson and Tanzer, Justices.

TANZER, J.

## TANZER, J.

In this case, *State v. Eastman/Kovach,* 292 Or 184, 637 P2d 609 (1981), and *State v. Tuma,* 292 Or 194, 637 P2d 614 (1981) (decided this date), we examine the nature and scope of restitution as authorized for criminal sentences by ORS 137.103 to 137.109. Each case presents different aspects of restitution.

## THE FACTS AND PROCEEDINGS

Here, defendant refused to stop his car when signalled to do so by a Springfield police officer. A 60-mile high-speed chase ensued. Eventually, defendant's car was boxed in by three police cars. Defendant refused an officer's order to get out of his car. Instead, defendant backed his car into one of the police cars, damaging it. When told again to get out of the car, defendant drove his car into one of the police officers, striking his knee. An officer then fired at defendant, striking him in the face. He received emergency medical treatment, which was paid for by the Adult and Family Services Division of the Department of Human Resources (AFS). One of the police cars was also damaged by the gunfire.

Defendant was convicted of assault in the fourth degree for hitting the police officer with his car, recklessly endangering another, criminal mischief in the first degree for hitting the police car with his own, attempting to elude a police officer, and driving while his license was revoked. He was sentenced to six months' incarceration on some charges and five years on others. Additionally, he was sentenced to pay the following items of restitution, after his release from incarceration: (1) $5,381.05 to AFS for payment of his medical expenses; (2) $426.95 to the Springfield Police Department for damage to the patrol car struck by gunfire; and (3) $507 to Lane County for damage to the patrol car defendant hit. Defendant made timely objection.[1]

---

[1] The order for restitution was general. It did not base restitution on any particular count, but the order apparently applied to the aggregate conviction. There is no challenge based on the absence of an allocation of restitution amounts among the individual counts of which defendant was convicted. Also, defendant raised no constitutional objection to ORS 137.103 to 137.109 or to this sentence. Hence, we confine ourselves to statutory construction and application.

The Court of Appeals vacated the orders requiring payment to AFS and to the Springfield Police Department, and affirmed the order to Lane County for damage to the patrol car. It concluded that ORS 137.103 to 137.109 authorizes an order of restitution only when the defendant's conviction itself establishes his civil liability for the loss, or when defendant admits liability. We affirm that portion of the Court of Appeals decision which vacated the order to AFS and which affirmed the order to Lane County. We reverse that portion which vacated the order to the Springfield Police Department.

## STATUTORY HISTORY

To construe the present restitution statute, a review of its history is helpful. Until 1977, restitution was authorized only as a condition of probation. Former ORS 137.540(10) (1977) authorized a sentencing court to require as a condition of probation that defendant

"[m]ake reparation or restitution to the aggrieved party for the damage or loss caused by [the] offense, in an amount to be determined by the court."

The terms "reparation or restitution" and "aggrieved party" were not further defined.

In *State v. Stalheim,* 275 Or 683, 552 P2d 829 (1976), this court construed ORS 137.540(10) narrowly, limiting its application both as to persons entitled to receive restitution and as to the nature of the restitution which could properly be ordered. We noted that a broad interpretation of ORS 137.540(10) allowing unliquidated damages as an item of restitution would leave the trial judge in the difficult position of performing a typical jury function, that of assigning value to losses like pain and suffering, loss of consortium, and the like. To avoid this difficulty, we declined to interpret ORS 137.540(10) to authorize restitution for uncertain losses. Instead, we construed it to authorize restitution only for liquidated or easily measurable losses resulting from the charged offense. Moreover, we noted the rehabilitative purposes of the restitution statutes, and we concluded that that effect would be lost if defendant were ordered to make restitution to anyone other than the direct victim of the crime. Specifically, we held that a man whose wife and daughter had

been killed in an accident for which defendant was convicted of criminally negligent homicide was not an aggrieved party to whom restitution was properly ordered paid, because he was not a direct victim of the crime. Finally, we held that if a defendant requested it, he was entitled to a hearing on the amount of the victim's loss.

In 1977, the legislature reacted to *Stalheim*[2] by enacting the restitution statute applicable to this case, ORS 137.103 to 137.109:

ORS 137.103 (definitions):

"(1) 'Criminal activities' means any offense with respect to which the defendant is convicted or any other criminal conduct admitted by the defendant.

"(2) 'Pecuniary damages' means all special damages, but not general damages, which a person could recover against the defendant in a civil action arising out of the facts or events constituting the defendant's criminal activities and shall include, but not be limited to, the money equivalent of property taken, destroyed, broken or otherwise harmed, and losses such as medical expenses.

"(3) 'Restitution' means full, partial or nominal payment of pecuniary damages to a victim.[3]

---

[2] The Interim Committee on the Judiciary drafted HB 2012, which was eventually passed as ORS 137.103 to 137.109. The legislative history contains numerous references to *Stalheim*. For example, when Dennis Bromka, Legal Counsel to the Interim Committee on the Judiciary, explained a draft of HB 2012 to the Subcommittee on Corrections, he noted that the draft responded to the *Stalheim* decision, commentary from judges, and other input. Minutes, Legislative Interim Committee on the Judiciary, Subcommittee on Corrections, August 20, 1976, p 2.

Similarly, Mr. Bromka explained to the full Interim Committee that the draft followed certain suggestions of the Supreme Court in *Stalheim*. Minutes, Legislative Interim Committee on the Judiciary, September 9, 1976, p 11.

*See also* note 6, for Mr. Bromka's explanation of the bill to the House Judiciary Committee on January 18, 1977, as being based upon the *Stalheim* decision.

[3] Subsection (3) has since been amended, Or Laws 1981, ch 637, by the addition of this sentence:

"Restitution is independent of and may be awarded in addition to punitive compensation awarded under section 2 of this 1981 Act."

The 1981 legislature also adopted section 2 of chapter 637 which has not been codified:

"(1) Whenever the court imposes a fine as penalty for the commission of an intentional crime resulting in serious physical injury for which the person injured by the act constituting the crime has a remedy by a civil action, unless the issue of punitive damages has been previously decided in a civil case

"(4) 'Victim' means any person whom the court determines has suffered pecuniary damages as a result of the defendant's criminal activities; 'victim' shall not include any co-participant in the defendant's criminal activities."

ORS 137.106:

"(1) When a person is convicted of criminal activities which have resulted in pecuniary damages, in addition to any other sentence it may impose, the court may order that the defendant make restitution to the victim.

"(2) In determining whether to order restitution which is complete, partial or nominal, the court shall take into account:

"(a) The financial resources of the defendant and the burden that payment of restitution will impose, with due regard to the other obligations of the defendant;

"(b) The ability of the defendant to pay restitution on an instalment basis or on other conditions to be fixed by the court; and

"(c) The rehabilitative effect on the defendant of the payment of restitution and the method of payment.

"(3) If the defendant objects to the imposition, amount or distribution of the restitution, the court shall at the time of sentencing allow him to be heard on such issue."

ORS 137.109:

"(1) Nothing in ORS 137.103 to 137.109, 137.540, 144.275, 161.675 and 161.685 limits or impairs the right of a person injured by a defendant's criminal activities to sue and recover damages from the defendant in a civil action. Evidence that the defendant has paid or been ordered to pay restitution pursuant to ORS 137.103 to 137.109,

---

arising out of the same act and transaction, the court may order that the defendant pay any portion of the fine separately to the clerk of the court as compensatory fines in the case. The clerk shall pay over to the injured victim or victims, as directed in the court's order, moneys paid to the court as compensatory fines under this subsection.

"(2) Compensatory fines may be awarded in addition to restitution awarded under ORS 137.103 to 137.109.

"(3) Nothing in this section limits or impairs the right of a person injured by a defendant's criminal acts to sue and recover damages from the defendant in a civil action. Evidence that the defendant has paid or been ordered to pay compensatory fines under this section may not be introduced in any civil action arising out of the facts or events which were the basis for the compensatory fine. However, the court in such civil action shall credit any compensatory fine paid by the defendant to a victim against any judgment for punitive damages in favor of the victim in the civil action."

137.540, 144.275, 161.675 and 161.685 may not be introduced in any civil action arising out of the facts or events which were the basis for the restitution. However, the court shall credit any restitution paid by the defendant to a victim against any judgment in favor of the victim in such civil action.

"(2) If conviction in a criminal trial necessarily decides the issue of a defendant's liability for pecuniary damages of a victim, that issue is conclusively determined as to the defendant if it is involved in a subsequent civil action."

These statutes were intended to codify *Stalheim* in certain respects, but to depart from it in others. Subsection (2) of ORS 137.103 codifies *Stalheim* in part in that it limits permissible items of restitution to special damages.[4] Subsection (3) extends *Stalheim* in that the defendant is entitled to be heard on the imposition as well as the amount of restitution. Also, subsection (2) requires the sentencing court, when ordering restitution, to consider both defendant's financial circumstances and the rehabilitative effect which an order of restitution would have. Finally, subsection (4) was to supersede that portion of *Stalheim* which limited payment of restitution to the direct victim of a crime by defining a larger class of eligible beneficiaries.[5]

Certain conclusions regarding the nature of restitution can be drawn from the legislative history. Foremost, restitution is a sentencing device authorized instead of, or in addition to, incarceration. Because of the nature of

---

[4] The definition of pecuniary damages also allows restitution for a form of damage which is general (*i.e.,* "the money equivalent of property taken, destroyed, broken or otherwise harmed"). Throughout this opinion we use the term "special damages" in this larger statutory sense.

[5] The Interim Committee's summary of its final draft of HB 2012 states that the term "victim" includes not only direct victims, but those legally responsible for the pecuniary damage of victims such as the widow of a victim killed by a negligent homicide. Report of the Subcommittee on Corrections, Legislative Interim Committee on the Judiciary, September 9, 1976, p 17. HB 2012 was referred in the Senate to the Committee on the Judiciary. When introducing it in the committee, Edward Sullivan, Legal Counsel to the Governor and Chairman of the Governor's Task Force on Corrections, explained that the bill was intended to reverse this aspect of *Stalheim* by broadening the definition of victim beyond the direct victim. Minutes, Senate Committee on the Judiciary, May 31, 1977, p 5; June 2, 1977, p 9.

restitution, the statutory scheme presents a peculiar blend of both civil and criminal law concepts, but it is not a form of civil liability and recovery. The theory of restitution is penological: It is intended to serve rehabilitative and deterrent purposes by causing a defendant to appreciate the relationship between his criminal activity and the damage suffered by the victim.[6] To make this relationship evident to the defendant, the permissible amount of restitution is measured by the injury to the victim. The statute borrows from civil law in that it limits the type and amount of restitution to that which could be recovered as special damages in a civil suit against the defendant. An order of restitution also resembles a civil judgment in that the defendant is required to make payments to the victim rather than to the state.

■    In spite of this resemblance, restitution was clearly not intended to be the equivalent of a civil award. For example, it does not necessarily fully compensate the victim. There are no general or punitive damages. Unlike a civil recovery, defendant cannot be required to pay damages beyond his ability to pay. Instead, ORS 137.109(1) specifically provides that a restitution order does not impair a person's right to bring a civil action against the defendant, although there is a credit for amounts paid as restitution, and some collateral estoppel effect under ORS 137.109(2). The legislative history makes clear that the

---

[6] HB 2012 was referred in the House to the Committee on the Judiciary. In introducing the bill to the committee, Mr. Bromka explained the operation of the bill. The minutes state:

"This bill takes much of its language and what it does from the State vs. Stalheim case referred to by Mr. Sullivan of the Governor's Task Force. Restitution, in theory, may help rehabilitate the offender; there is a strong feeling that if the offender is made to suffer a loss and pay for the responsibility of the loss he caused, there is greater likelihood he'll not do it again. * * *" Minutes, House Committee on Judiciary, January 18, 1977, p 3.

At another committee meeting, Mr. Bromka explained the definition of "restitution" in HB 2012 as follows:

"MR. BROMKA said the point of the definition of restitution is a red flag to the courts that restitution does not mean restitution in full or partial restitution. It's any form of restitution that brings home to the defendant that they damaged an individual and they should make some sort of recompense to the individual. * * *" Minutes, House Committee on Judiciary, April 29, 1977, p 12.

statute's purposes are penal, not compensatory.[7] Thus, restitution must be understood as an aspect of criminal law, not as a quasi-civil recovery device.

■ ■ Although the civil law concepts incorporated in the restitution process do not convert a criminal sanction into civil compensation, they nevertheless have a significant function in the criminal proceeding. They are a circumscription of the authority of the court. The court does not have authority to require whatever recompense it deems would have rehabilitative and deterrent effect. Its authority is limited to what would otherwise be special damages recoverable in civil proceedings by specified persons or entities. Therefore, the first question before a sentencing court is "what restitution, if any, will best serve rehabilitative and deterrent purposes?" and the second is "would that be recoverable as special damages if this were a civil case?". The civil law concepts are merely a limitation of criminal sentencing authority.

■ ■ The procedural requirements for imposition of a sentence of restitution are those ordinarily associated with sentencing. A sentencing judge may consider anything he

---

[7] In response to concerns expressed by Senator Carson during the Interim Committee on the Judiciary's hearings on HB 2012, regarding the constitutionality of determining loss without a jury, Representative Magruder, Committee Chairman, made the following statements:

"I don't think that that is a question of what he owes [the victim], I think it is a question of the sentence and what we are saying is the restitution is basically part of that sentence. We are giving that judge the power, requiring him, as part of that sentence, to require restitution.

\* \* \* \* \*

"This is not intended to be a substitution of your civil remedy.

\* \* \* \* \*

"I think your problem, Sen. Carson, is that we are not making necessarily a full determination of what the injuries are, we're looking at this as part of [the] sentencing process." Interim Committee on Judiciary, Corrections Subcommittee Minutes, February 13, 1976, pp 9-11.

The following was in response to a motion in the House Committee on the Judiciary to make consideration of restitution as a sentence permissive:

"REP. GARDNER said he felt strongly that even where a defendant did not have the financial exposure that there should at least be some nominal amount in restitution that he has to make to force him to realize that he has damaged another person. He said he would oppose the motion for that reason." Minutes, House Committee on Judiciary, April 29, 1977, p 13.

ordinarily would at any sentencing hearing, but in addition, ORS 137.106(2) requires a sentencing court to focus on the defendant's circumstances in deciding whether to order restitution, and if so in what amount. The court must consider the defendant's ability to pay, his other obligations, the burden an order of restitution would impose upon him, and the rehabilitative effect of a restitution order. The primary focus, as is true in traditional sentencing, is on the rehabilitative or deterrent effect the sentence will have on the defendant, not the extent to which the victim will be compensated. Thus the procedures by which restitution is required are consistent with the penal nature of restitution.

## APPLICATION OF THE STATUTE TO THE FACTS

■ We now analyze the statute as it applies to this case. ORS 137.106(1) states:

> "When a person is convicted of criminal activities which have resulted in pecuniary damages, in addition to any other sentence it may impose, the court may order that the defendant make restitution to the victim."

The statute authorizes a court to order restitution when a person's criminal activities have resulted in pecuniary damages. In other words, there are three prerequisites: (1) criminal activities, (2) pecuniary damages, and (3) a causal relationship between the two.

■ ■ Here, the damage is a result in fact of defendant's criminal activities. That term includes "any offense [of] which the defendant is convicted." ORS 137.103(1), *supra.* He was convicted of assault in the fourth degree for hitting the police officer with his car, and for criminal mischief for hitting the police car with his own. All of the challenged restitution orders are for damages which resulted from these offenses. Defendant's criminal mischief directly caused the damage to the police car which he bashed. As to the damage to the police car hit by gunfire and the medical bills for defendant's gunshot wound, the police officer who fired at defendant did so in reaction to defendant's assault. The defendant's medical bills and the damage to the police car are direct results of the offense of assault in the fourth degree. We conclude that the requisite causal relationship exists in this case.

For there to be restitution, ORS 137.106(1) also requires that the damages suffered be "pecuniary damages," as defined by ORS 137.103(2), *supra.* The term encompasses two requirements. The damages for which restitution is ordered must be special, not general, and they must be damages which could be recovered against the defendant in a civil action arising out of the facts or events constituting defendant's criminal activities. We examine each of these requirements in turn.

"Pecuniary damages," by definition, includes "the money equivalent of property * * * harmed, and losses such as medical expenses," ORS 137.103(2). All three items of restitution ordered here are within these two categories. The orders of restitution to the police agencies were to compensate for vehicles damaged, and the order to AFS was for defendant's medical expenses. They are all special damages resulting from defendant's criminal activities. The remaining question, dispositive of this case, is whether the damages in this case are those which could be recovered against the defendant in a civil action arising out of the facts or events constituting the criminal activities.

■ The damage to the sheriff's car which defendant hit with his own was a consequence of that act. It is an item of damages for which defendant could have been civilly liable under any recognized formulation of tort law. The trial court and the Court of Appeals properly allowed this item of restitution to Lane County.

■ Similarly, the order of restitution for the police car damaged by the gunfire was authorized. The police officer fired at defendant in defense against defendant's conduct. Defense against an assault is a consequence of the assault, as is the possibility that persons or property will be damaged in the process. Because the damage to the police car could have been recoverable against the defendant in a civil action arising out of the facts or events constituting the criminal activity, the assault, we conclude that restitution to the Springfield Police Department was authorized.

■ In contrast, the payments by AFS cannot be considered pecuniary damages because the record discloses no facts giving rise to a theory of civil liability under which

AFS could recover defendant's medical expenses from him. ORS 414.032 requires that AFS make available medical assistance for persons who are "categorically" or "medically needy." There is no provision for liability or responsibility of the assistance recipient for repayment.[8] The record shows only that defendant was provided medical services upon his presentation of his card from AFS showing him to be eligible for such services. There is no way for the sentencing court to have found that defendant could be civilly liable to AFS for his medical expenses. Therefore AFS is not a "victim" as defined by ORS 137.103(4) because the expenses are not pecuniary damages. The order of restitution to AFS was not authorized.

The decision of the Court of Appeals is affirmed in part and reversed in part. Remanded for resentencing.

---

[8] Under ORS 414.105(1), AFS may recover medical assistance benefits incorrectly paid. We find no other statutory basis for recovery by AFS of such payments. Nothing in the record indicates that defendant was not eligible for benefits or that payment was made incorrectly.