Argued and submitted January 21, 1999, affirmed May 9, 2001

## STATE OF OREGON,
*Respondent,*

*v.*

## ERIC RODNEY HVAL,
*Appellant.*

### Z448855; A101650

25 P3d 958

Garrett A. Richardson argued the cause and filed the brief for appellant.

Jennifer S. Lloyd, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Haselton, Presiding Judge, and Deits, Chief Judge,* and Linder, Judge.

---

* Deits, C. J., *vice* De Muniz, J., resigned.

LINDER, J.

**LINDER, J.**

Defendant appeals from a judgment of conviction for failure to perform the duties of a driver when property is damaged, an offense commonly termed "hit and run." ORS 811.700(1)(a). He assigns error to the trial court's denial of his motion for judgment of acquittal and to the court's order under ORS 811.706 requiring him to pay $500 compensation to the victim as a condition of probation. We affirm.

The relevant facts are not disputed. Janell Suell was driving her car through a Portland intersection when it was struck on the left side by a car driven by defendant. Defendant got out of his car and walked away without providing any information to Suell. Some time later, while Suell and police officers were still at the scene, defendant returned and identified himself to the officers as the driver of the car that struck Suell's. A police officer at the accident scene cited defendant for "hit and run" under ORS 811.700(1)(a), which makes it a criminal offense to leave the scene of a vehicular accident involving property damage to another vehicle without performing certain duties, such as providing identifying information to the owner of the damaged property.

Damage to Suell's car totaled approximately $5,000, and her car had to be towed from the scene. According to the police officer who cited defendant, Suell had "no visible injuries" at that time. In fact, however, she later was diagnosed as suffering from a "cervical lumbar sprain" caused by the collision and was treated for that injury. At trial, after the state's closing argument, defendant moved for a judgment of acquittal, arguing that a person is not guilty of "hit and run" under ORS 811.700(1)(a) if the collision causes personal injury in addition to property damage. The trial court denied the motion, and the jury found defendant guilty. The trial court sentenced defendant to two years' bench probation and, based on the amount of the insurance deductible Suell had paid toward the cost of repairing her car, ordered that defendant pay "restitution" to Suell in the amount of $500 pursuant to ORS 811.706.

Defendant's first assignment of error challenges the trial court's denial of his motion for judgment of acquittal.

Defendant's argument is premised on the text of ORS 811.700(1)(a), which provides:

"A person commits the offense of failure to perform the duties of a driver when property is damaged if the person is the driver of any vehicle and the person does not perform duties required under any of the following:

"(a) If the person is the driver of any vehicle involved in an accident that results *only* in damage to a vehicle that is driven or attended by any other person the person must perform [the enumerated duties]."

(Emphasis added.) Violation of that provision is a Class A misdemeanor. ORS 811.700(2). Defendant contrasts the misdemeanor "hit and run" offense with the felony "hit and run" offense under ORS 811.705, which states, in part:

"(1) A person commits the offense of failure to perform the duties of a driver to injured persons if the person is the driver of any vehicle involved in an accident that results in injury or death to any person and does not [perform all of the enumerated duties]."

*See also* ORS 811.705(2) (making a violation of subsection (1) a Class C felony). Defendant takes the position that, when an accident causes personal injury in addition to property damage, a driver's failure to perform specified duties can be a violation only of the felony "hit and run" statute because the fact of the personal injury takes the circumstances outside the scope of the misdemeanor "hit and run" statute. According to defendant, either he was guilty of felony "hit and run" or he was not guilty of any offense at all, and the trial court, therefore, should have granted his motion for judgment of acquittal.

■ Our analysis of the statute's meaning begins with text and context. *See PGE v. Bureau of Labor and Industries,* 317 Or 606, 610-12, 859 P2d 1143 (1993). Faithful to that methodology, the parties focus their arguments first on the meaning of the word "only" as it is used in ORS 811.700(1)(a). Defendant contends that "only" means "being one * * * of which there exist no others" or "alone." In defendant's view, a charge under ORS 811.700 is limited to cases in which there is only property damage as specified by the statute, without other damage or injury. The state responds that the plain

meaning of the word "only" includes, among other definitions, "at the very least." In the state's view, a charge under ORS 811.700 requires that there be at least property damage of the kind specified but not such property damage alone.

Both parties' views find support in dictionary definitions. As used in ORS 811.700(1)(a), "only" is an adverb modifying the verb "results in." So used, the word can mean "exclusively," which would support the conclusion that defendant urges.[1] On the other hand, as the state argues, "only" when used as an adverb also can mean "at the very least." *See Webster's Third New Int'l Dictionary,* 1577 (unabridged ed 1993) (defining the adverb "only" in part as "exclusively, solely" and "at the very least"). Isolating the subsection in which "only" appears in the statute, the word plausibly could take on either of those meanings.[2]

That fact alone, however, does not render the statute ambiguous. The question remains whether both meanings are plausible in the context of the statutory scheme as a whole. As we explained in *Steele v. Employment Department,*

---

[1] The precise dictionary definition that defendant relies on is drawn from the definition of "only" used as an adjective, as would be apt if the legislature had phrased the sentence "results in only property damage," rather than "only results in property damage." Largely the same meanings that the parties rely on can be attributed to the word "only" when used either as an adverb or adjective. *See, e.g.,* Bryan A. Garner, *A Dictionary of Modern Legal Usage,* 390 (1987) (observing that the term "only" is "perhaps the most frequently misplaced of all English words"); Edward D. Johnson, *The Handbook of Good English,* 374 (1991) ("*only* is frequently placed carelessly in a sentence so that it is not clear what it modifies"). In this instance, we see no difference in the potential meanings to be ascribed to the term "only" based on whether it modifies "results in" or "property damage."

[2] In some contexts, the word "only" cannot plausibly assume both meanings. For example, in *Osborn v. PSRB,* 325 Or 135, 148, 934 P2d 391 (1997), the Oregon Supreme Court had to determine the meaning of the adverbial form of "only" as it is used in ORS 161.295(2), which provides that "mental disease or defect" does not include abnormalities manifested "only" by repeated criminal or otherwise antisocial conduct. The court held that the plausible meaning of the term in that context was limited to "exclusively" or "solely." Although this case does not provide us with an occasion to pass on the meaning of other statutes, one statute worth noting is OEC 803(18a)(b). It permits admission into evidence of an unavailable child's hearsay statement of sexual abuse "only if the proponent establishes that the time, content and circumstances of the statement provide indicia of reliability." At least at first blush, the most if not exclusive sensible meaning of the term "only" in that context is "at the least." That is, it seems highly implausible that the legislature intended to exclude a hearsay statement when it is reliable for reasons in *addition* to the time, content, and circumstances of its making.

143 Or App 105, 113-14, 923 P2d 1252 (1996), *aff'd* 328 Or 292, 974 P2d 207 (1999):

> "[M]any of the words in our language have several meanings or shades of meaning. However, it does not follow from the fact that there are several variations of how a word is defined in the dictionary that all of the variations are pertinent whenever the word is used, or that each variation is an arguably plausible description of what the word means as it is used in a particular statute. The subject and purpose of the statute, together with the statutory language that surrounds the word in question, narrow the array of definitional choices that dictionaries alone afford and go far in identifying the intended meaning of the word as used in the statute."

*See also To v. State Farm Mutual Ins.*, 319 Or 93, 99, 873 P2d 1072 (1994).

The context of the disputed word in this case reveals ORS 811.700 to be one of several statutes describing the duties that a motor vehicle driver must perform when involved in an accident. The legislature has organized the offenses by type of damage or injury and the accompanying penalty. ORS 811.700 identifies a driver's duties when an accident results in property damage and makes the offense a Class A misdemeanor. ORS 811.705 defines a driver's duties for an accident that results in injury or death to a person and makes the offense a Class C felony. Finally, ORS 811.710 describes a driver's duties when the driver knowingly strikes and injures a domestic animal and makes the offense a Class B traffic infraction.

The statutes have parallel structures. Subsection (1) of the property damage statute describes that offense as one committed "when property is damaged if the person * * * does not perform [the] duties required" as specified in the statute's further subsections. ORS 811.700(1). Similarly, subsection (1) of the personal injury statute describes that offense as one committed "if the person is the driver of any vehicle involved in an accident that results in injury or death to any person and does not do all" of the duties enumerated in the statute. ORS 811.705(1). Finally, the animal injury provision describes that offense as one committed "when an animal is injured if the person knowingly strikes and injures a

domestic animal and the person does not do all" of the duties specified in the statute's subsections. ORS 811.710(1).

None of the quoted portions of the cited provisions includes the word "only" or any other language suggesting that the various "hit and run" provisions address mutually exclusive circumstances. That is, none of the provisions requires or textually contemplates that a driver's obligation to perform the enumerated duties is limited to circumstances in which an accident involves one, rather than one or more, of the duty-triggering types of damage or injury. Indeed, as a matter of common sense and experience, accidents frequently involve multiple kinds of damage. For example, a driver of a vehicle might swerve left to avoid a dog but nevertheless hit both the dog and an oncoming car. Under defendant's proposed interpretation of the property damage statute, the swerving driver would be free to leave the scene without exchanging any information with the other driver. Instead, the driver's only obligations would run to the dog and its owner. By contrast, if the driver swerved into the other lane and missed the dog but collided with the other car, the driver would owe the other driver the full set of duties identified by the statute. That outcome frustrates rather than serves the statutory goal of deterring drivers from fleeing an accident scene without performing required duties, and thereby escaping financial responsibility for damage they have caused. *See State v. Martin*, 298 Or 264, 268, 691 P2d 908 (1984) (describing the policy served by the predecessor statutes). Nothing in the discrete provisions of the statute, or the statutory scheme as a whole, supports such a reading.

Defendant's argument to the contrary relies on paragraph (a) of subsection (1) of the property damage statute, which describes a driver's duties when an accident results "only" in damage to a vehicle that is driven or attended by another. That paragraph is one of three that specify a driver's duties when involved in a vehicular accident involving property damage, each imposing a slightly different set of duties depending on the character of the property damaged. Paragraph (a) addresses accidents involving another "driven or attended" vehicle—that is, a multi-vehicle accident in which

the owner or operator of the other vehicle is present. Paragraph (b) addresses accidents involving an unattended vehicle. Finally, paragraph (c) addresses damage to fixtures or property legally upon or adjacent to a highway. In short, the scope of ORS 811.700 is limited to *property* damage of various, and limited, kinds. It does not purport to control the duties that attach where damage of other types is involved. That fact supports the state's proposed interpretation that "only" means merely "at the least."

■ One final consideration leads us to so conclude. As we have held, personal injury alone does not give rise to any duties under ORS 811.705; rather, a defendant must be shown to have had knowledge of the injury. *See State v. Van Walchren*, 112 Or App 240, 245, 828 P2d 1044, *rev den* 314 Or 574 (1992) (felony "hit and run" offense requires a defendant's knowledge of the personal injury); *State v. Corpuz*, 49 Or App 811, 820, 621 P2d 604 (1980) (same under predecessor statute). As the state points out, that requirement forecloses a prosecution under the felony "hit and run" statute in many cases involving personal injury, either because a driver who flees an accident scene may not, in fact, know that an injury was involved or, at the least, the state may have difficulty proving the fact of the driver's knowledge. Consequently, if defendant were correct in his interpretation of ORS 811.700(1)(a), there would be a significant, and perhaps even irrational, gap in the statutory scheme. Specifically, under defendant's understanding, if a driver's vehicle collided with another vehicle, causing property damage and also causing physical injury that was not known or apparent until later, it would not be a crime for the driver to flee the scene without satisfying any duty under ORS 811.700(1)(a). Said another way, under defendant's interpretation, it would be a crime to flee an accident scene where there is property damage but no injury; it would be a crime to flee an accident scene where there is property damage and a known injury; but it would not be a crime at all to flee an accident scene where there is property damage and a latent or otherwise unknown injury. Simply put, that is not a plausible meaning to give to the statute. We decline to adopt defendant's proposed but patently implausible interpretation of the term "only" where

an alternative meaning *is* plausible and makes sense of the statute in the context of the scheme as a whole.

■ In sum, ORS 811.700 describes a driver's responsibilities when an accident involves property damage. It does not define or describe the driver's duties when there are other kinds of injury or damage. That is the function of ORS 811.705, which addresses a driver's duties when an accident results in personal injury, and of ORS 811.710, which addresses a driver's duties when a domestic animal is injured. The duties that the different statutes impose are independent. Thus, in this case, if the state could have established, either by direct evidence or by inference, that defendant knew of Suell's personal injuries at the time of the accident, the state could have prosecuted him under the felony "hit and run" statute (ORS 811.705) pertaining to duties of a driver in an accident resulting in personal injury. Any ability to do so, however, did not preclude the state from also charging and seeking a conviction under the misdemeanor "hit and run" statute (ORS 811.700), when, as here, an independent set of duties arose because the accident resulted in property damage to an attended vehicle. *See State v. Talbert*, 153 Or App 594, 599, 958 P2d 902 (1998) (misdemeanor "hit and run" and felony "hit and run" are independent offenses). Consequently, the trial court correctly denied defendant's motion for judgment of acquittal.

We turn to defendant's second assignment of error, in which he argues that the trial court erred in ordering him, under ORS 811.706, to pay Suell $500 to compensate her for her out-of-pocket vehicle repair costs. Defendant does not dispute that the award in this case was authorized by the statute itself. Rather, defendant challenges the award on the theory that the statute is unconstitutional. Defendant's constitutional arguments are loosely focused but appear to reduce to three basic propositions. First, defendant argues that the amount authorized to be awarded is in the nature of a civil damages award rather than a criminal sanction and, therefore, constitutionally cannot be imposed without a civil jury trial. Defendant also argues that, even if an award under the statute is criminal in nature, it is unconstitutionally

"excessive" because it lacks an adequate nexus to the criminal conduct that is the basis of a "hit and run" conviction. Lastly, defendant argues that the award violates due process principles because it is not subject to meaningful post-judgment review.

Defendant's challenges are best understood in the context of Oregon's restitution laws as a whole and the circumstances that led to the enactment of ORS 811.706. Before 1977, a trial court was authorized to order, as a condition of probation, "reparation or restitution to the aggrieved party for the damage or loss caused by [the] offense, in an amount to be determined by the court." ORS 137.540(10) (1975). The pre-1977 statute did not define the terms "reparation or restitution," nor did it describe who was an "aggrieved party" entitled to compensation for damage or loss. In *State v. Stalheim*, 275 Or 683, 552 P2d 829 (1976), the Oregon Supreme Court reviewed the statute's terms and the scope of the award authorized by it. The court observed that the statute was susceptible to a particularly broad interpretation and potentially could be understood to authorize the imposition of unliquidated damages, such as pain and suffering, decreased earning capacity, loss of consortium and the like. The court foresaw practical problems arising from such a broad understanding of the statute, primarily in the form of placing a criminal trial judge "in the difficult if not impossible position of having to assign a value to a loss he knows little about." *Id.* at 687. The court also viewed a broad interpretation of the kind of damages to be awarded as potentially infringing a defendant's right to "a jury determination of damages which would be available to him in a civil trial." *Id.*

As a result of the "legal and practical complexities" of the statute's broad terms, the *Stalheim* court construed the statute narrowly in several respects. First, it held that awards under the statute could be imposed only as compensation for liquidated or easily measurable losses arising from the adjudicated criminal conduct. That is, the court authorized awards only for "easily perceived" losses rather than speculative ones. *Id.* at 687-89. Likewise, to ensure the rehabilitative—and thus penal—purpose of any such award, the court limited restitution under the former statute to the direct victim of the criminal conduct, rather than extend it to

persons who might have suffered loss indirectly as a result of the direct victim's death, injury, or other losses. *Id.* at 688. Finally, the court held that, when the amount to be imposed is disputed, a defendant is entitled to a hearing on that issue. *Id.* The court concluded its opinion by acknowledging that the limitations it was imposing were, in part, policy-driven; the court therefore invited "legislative scrutiny" of the statute's broad terms. *Id.* at 689.

The legislature accepted that invitation in short order by enacting, in 1977, much of what continues in force as the current restitution scheme. *See* ORS 137.103 to ORS 137.109. The enactments were intended to codify *Stalheim* in certain respects and to depart from it in others. *State v. Dillon*, 292 Or 172, 178, 637 P2d 602 (1981) (so observing, based on review of legislative history). Consistently with *Stalheim*, the 1977 enactments limited restitution to special damages that a person could recover in a civil action arising out of criminal conduct; they also ensured a hearing on the amount of restitution to be awarded. The legislature departed from *Stalheim* by expanding the class of victims entitled to such an award; by permitting a defendant to be heard on the imposition as well as the amount of the award; and by requiring the sentencing court to consider a defendant's ability to pay. *See Dillon*, 292 Or at 176-78 (discussing the 1977 enactments). Additionally, the legislature made express a consideration that *Stalheim* regarded to be implicit in the prior statute. Under the pre-1977 restitution provision, restitution was authorized as a condition of a defendant's probation and, hence, formed a part of the defendant's sentence. That fact caused the court in *Stalheim* to conclude that an award under the statute was intended to serve traditional penal goals, such as rehabilitation and deterrence. *Stalheim*, 275 Or at 688-89. The 1977 enactments retained that emphasis and made them express by directing a trial court to consider, among other factors, the rehabilitative and deterrent effect of any restitution imposed. *Dillon*, 292 Or at 177-79.

As the Supreme Court has observed of the 1977 restitution enactments, the damage award authorized by that scheme remains fundamentally penal in nature, because "[i]t is intended to serve rehabilitative and deterrent purposes by causing a defendant to appreciate the relationship between

his criminal activity and the damage suffered by the victim."
*Id.* at 179. The court characterized the restitution scheme as
a "peculiar blend of both civil and criminal law concepts," one
that borrowed from civil compensatory concepts by basing an
award on the amount of special damages that could be
awarded in a civil case and by requiring payment to the vic-
tim rather than to the state. *Id.* But the court in *Dillon*
rejected the idea that those aspects of the scheme converted
criminal restitution into civil compensation:

> "In spite of this resemblance [to civil liability and recov-
> ery], restitution was clearly not intended to be the equiva-
> lent of a civil award. For example, it does not necessarily
> fully compensate the victim. There are no general or puni-
> tive damages. Unlike a civil recovery, defendant cannot be
> required to pay damages beyond his ability to pay. Instead,
> ORS 137.109(1) specifically provides that a restitution
> order does not impair a person's right to bring a civil action
> against the defendant, although there is a credit for
> amounts paid as restitution, and some collateral estoppel
> effect under ORS 137.109(2). The legislative history makes
> clear that the statute's purposes are penal, not compensa-
> tory. Thus, restitution must be understood as an aspect of
> criminal law, not as a quasi-civil recovery device."

*Id.* at 179-80. The court noted that, instead of converting res-
titution into a civil compensatory award, the civil aspects of
the restitution scheme served to *circumscribe* the criminal
court's sentencing authority:

> "The court does not have authority to require whatever
> recompense it deems would have rehabilitative and deter-
> rent effect. Its authority is limited to what would otherwise
> be special damages recoverable in civil proceedings by spec-
> ified persons or entities. Therefore, the first question before
> a sentencing court is 'what restitution, if any, will best
> serve rehabilitative and deterrent purposes?' and the sec-
> ond is 'would that be recoverable as special damages if this
> were a civil case?'. The civil law concepts are merely a limi-
> tation of criminal sentencing authority."

*Id.* at 180.

The legislative changes made to the restitution
scheme in 1977 led to a second relevant decision interpreting
the nature and scope of the damages authorized under the

restitution statutes: *State v. Eastman/Kovach*, 292 Or 184, 637 P2d 609 (1981). When that case arose, ORS 137.106(1) was the only source of authority for ordering restitution following a criminal conviction of any kind, including a conviction for "hit and run." The statute then authorized restitution only for pecuniary damages that result from a person's "criminal activities," thus requiring a direct causal nexus between the crime and the damages.[3] In a "hit and run" case, the "criminal activity" is leaving the scene without providing information or assistance; neither involvement in the accident nor causing the accident is a criminal act. Consequently, in *Eastman/Kovach*, the Supreme Court held that damages that result from the accident itself, rather than from the "criminal activity" of failing to provide the required information, could not be awarded because they were not authorized by ORS 137.106(1). 292 Or at 189-90.

■ The legislature responded to that limitation in 1995 by enacting ORS 811.706, the statute that defendant challenges in this case. It provides:

"When a person is convicted of violating ORS 811.700 or 811.705, the court, in addition to any other sentence it may impose, may order the person to pay an amount of money equal to the amount of any damages caused by the person as a result of the incident that created the duties in ORS 811.700 or 811.705."

As we concluded in *State v. Kappleman*, 162 Or App 170, 174, 986 P2d 603 (1999), that 1995 enactment confers on trial courts the restitution authority that *Eastman/Kovach* held was lacking under ORS 137.106(1). But as we further concluded, the statute does not authorize an award *whenever* a defendant is convicted of "hit and run." Rather, as a predicate to an award under the statute, the trial court must find that the defendant "caused" the accident that gave rise to the duties that the defendant failed to perform. *Kappleman*, 162 Or App at 175.

■ With that background, we turn to defendant's constitutional challenges to ORS 811.706, considering first his

---

[3] In 1999, the legislature substituted the word "crime" for the reference to "criminal activities." Or Laws 1999, ch 1051, § 124. That change, however, would not alter the conclusion in *Eastman/Kovach*.

claim that the statute violates the Oregon Constitution's guarantee of a civil jury trial. Or Const, Art I, § 17 ("In all civil cases the right of Trial by Jury shall remain inviolate."). Many of defendant's arguments parallel the concerns that prompted the Supreme Court in *Stalheim* to construe the pre-1977 restitution statute narrowly. Specifically, defendant contends that the statute permits a trial court to award "virtually limitless" damages, general and punitive, as well as special. He further contends that the statute authorizes a court to order damages to be paid to a boundless class of potential victims, and to do so without regard to a defendant's ability to pay the amount imposed or consideration of the rehabilitative effect of the award. Such broad authority, in defendant's view, renders a damage award under the statute civil rather than criminal in nature, thus necessitating a civil jury trial.

If defendant were correct about the statute's breadth, we might well be obligated to give the statute a limiting construction to avoid the problems that defendant identifies, as the Supreme Court did in *Stalheim* and has done on other occasions. *See also Salem College & Academy, Inc. v. Emp. Div.*, 298 Or 471, 493-95, 695 P2d 25 (1985) (court will construe a statute consistently with constitutional requirements if the construction does not do violence to the legislature's expressed intention in enacting a particular statutory scheme). But here that approach is not required. The statute's plain terms, together with the statute's context, demonstrate that the scope of the award that the statute authorizes is significantly more narrow than defendant perceives.

By its express terms, ORS 811.706 allows a court to order payment of an amount of money equal to "any damages caused by the person as a result of the incident that created the duties" enumerated in ORS 811.700 and ORS 811.705. As we earlier described, the statutes defining the "hit and run" offenses are organized by type of damage or injury, each triggering a particular set of duties depending on the category of damage and injury caused by a vehicle collision. ORS 811.700 relates to property damage and is the provision that defendant violated in this case. It encompasses damage to vehicles (attended and unattended) and damage to fixtures or property legally adjacent to a highway. Given that context, the

reference to damage "caused" as a result of the incident that created the duties under ORS 811.700 plainly is a reference to the vehicular or other forms of adjacent property damage that may trigger the duties to be performed.[4] Thus, a trial court's authority to award amounts for damages is limited to a relatively small universe of property. In that respect, the damage award authorized by ORS 811.706 not only is much narrower than defendant contends, it is much narrower than the the scope of the general restitution provisions of ORS 137.106. *See, e.g.,* *Dillon,* 292 Or at 181 (the defendant could be required to pay costs of police apprehension of him, including damage to police vehicle caused by police gunfire).

Necessarily, then, the range of "victims" who may receive such an award is narrower as well. Contrary to defendant's position, in a prosecution under ORS 811.700, the only persons who may be awarded damages pursuant to ORS 811.706 are owners of damaged property as specified in the "hit and run" statute. Again, that is a narrower class of recipients than is authorized by the general restitution provision. *See* ORS 137.103(4) (defining "victim" for purposes of general restitution to include *any* person suffering pecuniary damages as a result of a defendant's criminal activity). Finally, because the authorized damages are limited to damage to vehicles and a few other types of physical property, they necessarily are liquidated and easily measurable. In short, defendant simply is wrong when he suggests that the statute is written in terms broad enough to encompass punitive and general damages or other similarly speculative, uncertain, and open-ended amounts.

Defendant next argues that a damage award pursuant to ORS 811.706 is civil in nature because the legislature failed to provide the same procedural protections that it has specified for restitution awards under ORS 137.106. Defendant emphasizes that the legislature made no provision for a hearing on imposition of an award under ORS 811.706. We

---

[1] Although we need not reach it, the legislative history of ORS 811.706 supports that interpretation. *See, e.g.,* tape recording, Senate Judiciary Committee, HB 2811, May 2, 1995, Tape 135, Side B (testimony of Rep. Prozanski, stating that the purpose of ORS 811.706 was to permit a person who "has had their car sideswiped or their fence knocked down" to "recoup their restitution or their damages").

have previously concluded, however, that as a predicate to imposing a damage award, ORS 811.706 requires the trial court to find that a defendant caused the accident that gave rise to the duties the defendant is convicted of having failed to perform. *Kappleman*, 162 Or App at 175. We have further held that, absent an admission in the record that would preclude a defendant from contesting fault in the accident, an adequate finding of causation requires the trial court to permit the defendant to present evidence on the issue. *Id.* at 176. Thus, contrary to defendant's position, he is entitled under the statute to a hearing on the imposition and the amount of any such award.

■ Defendant also points to the statute's failure to require a trial court to consider the rehabilitative or deterrent effect of such an award and a defendant's ability to pay it. Defendant is correct that the legislature did not make those considerations explicit in ORS 811.706, but we disagree that a trial court is free to disregard them. In *Stalheim*, the Supreme Court recognized the rehabilitative purpose of an award of restitution under the pre-1977 statute to be inherent in its imposition "as a condition of probation" and, thus, as an aspect of a defendant's sentence. 275 Or at 687-89. Here, ORS 811.706 expressly authorizes an award only following a conviction, and the statute specifies that it is to be imposed "in addition to any other sentence" that the trial court orders. Thus, a damage award under the statute is an aspect of a defendant's sentence. Indeed, in this case, the trial court ordered the amount to be paid as a condition of defendant's probation. Additionally, a damage award under the statute is not available as a matter of right to the person who incurs a compensable loss or injury. Rather, its imposition is committed to a trial court's sentencing discretion. Inherent in the sound exercise of sentencing discretion is a trial court's consideration of the deterrent and rehabilitative effects of the sentence imposed for a particular offense and offender. *See, e.g., State v. Patzer*, 8 Or App 491, 492-93, 493 P2d 1389 (1972); *see also* ORS 161.025 (deterrence and rehabilitation as goals of sentencing generally). Necessarily, then, by making an award under ORS 811.706 a part of a defendant's sentence, the legislature implicitly requires consideration of the award's deterrent and rehabilitative effects.

 As for defendant's concern that the statute does not require a sentencing court to consider a defendant's ability to pay, defendant cites no authority for the proposition that a criminal fine, restitution award, or other monetary exaction becomes civil in nature if a defendant lacks an ability to pay the award in full. Notably, the court in *Stalheim* did not find it necessary to impose an ability-to-pay requirement onto the pre-1977 restitution statute to avoid constitutional difficulties. In all events, nothing in ORS 811.706 precludes a defendant from objecting to imposition of a damage award on the basis of an inability to pay the amount to be imposed. In that regard, a defendant's position under ORS 811.706 is not significantly different from that of a defendant faced with a possible restitution award pursuant to ORS 137.106. Under that statute, a defendant has the burden to object to the imposition of restitution based on inability to pay. In response to such an objection, the trial court must consider defendant's financial circumstances as a factor, but not necessarily a dispositive one, in deciding whether to impose a restitution award. *See generally State v. Hart*, 329 Or 140, 147-48, 985 P2d 1260 (1999); *State v. Edson*, 329 Or 127, 134-35, 985 P2d 1253 (1999). A restitution award is "proper if, in light of the record as a whole, a trial court reasonably could have imposed it." *Hart*, 329 Or at 148. A trial court's authority under ORS 137.106 is restricted only where the record establishes *conclusively* that a defendant has no ability, presently and in the future, to pay a particular amount of restitution according to the schedule or terms that the court has imposed. *Edson*, 329 Or at 133.

 Finally, threaded throughout defendant's arguments is the suggestion that an award under ORS 811.706 is civil rather than criminal in nature because the legislature did not label the award "restitution." The character of the award is a functional inquiry, however, not a matter of labels.[5] An award under ORS 811.706 has all the earmarks of a penal

---

[5] As earlier observed, proponents of the enactment of ORS 811.706 referred interchangeably to an award under the statute as "restitution" and "damages." *See* 174 Or App at 178 n 4. Nothing in our review of the legislative history reveals why the term "restitution" was not used in the statute's text. Possibly, the term was not used to avoid triggering the definition in ORS 137.103(3) and either recreating the problem identified in *Eastman/Kovach*, rather than solving it, or at least creating ambiguity as to whether the definition in ORS 137.103(3) applied.

sanction and all of the characteristics of a conventional award of criminal restitution or reparation: It is discretionary with the court, both in its imposition and its amount; the person who will receive the award does not receive it as a matter of right, nor will that person necessarily be compensated in full; and it is imposed as an aspect of a defendant's sentence, to serve rehabilitative and deterrent purposes. *See generally Dillon*, 292 Or at 178-79. Given the penal function of the award authorized by ORS 811.706, defendant was not entitled to a civil jury trial on the issue of the imposition and amount of the award. *See State v. Hart*, 299 Or 128, 139, 699 P2d 1113 (1985) (where monetary award imposed as part of a defendant's sentence serves primarily penal rather than compensatory purposes, civil jury trial is not constitutionally required).

■ We turn next to defendant's argument that imposition of the payment violated Article I, section 16, of the Oregon Constitution. That provision declares, in part:

> "Excessive bail shall not be required, nor excessive fines imposed. Cruel and unusual punishments shall not be inflicted, but all penalties shall be proportioned to the offense."

Defendant argues that a payment ordered under ORS 811.706 is unconstitutionally excessive because it allows "unlimited" and possibly disproportionate awards of money that are "not causally related" to the criminal conduct that is the basis for a "hit and run" conviction.

Defendant's argument that the statute permits "unlimited" and speculative awards is refuted by the statute's text, as discussed above. Beyond that, defendant's essential thesis appears to be that any aspect of a defendant's sentence that takes into account something other than the immediate conduct constituting the criminal offense renders that aspect of the sentence constitutionally disproportionate and excessive. Defendant cites no authority for that proposition, nor are we aware of any. Presumably, were defendant correct, a sentencing court could not consider the history of an offender or circumstances surrounding the commission of

a crime that go beyond the crime's elements. Likewise, consistent with defendant's premise, a fixed fine or similar monetary exaction could never be imposed as a part of a defendant's sentence.

■■ Contrary to defendant's position, however, Article I, section 16, does not compel a direct relationship between the strict elements of a criminal offense and all aspects of a defendant's sentence. Rather, to avoid the prohibition against excessive sentences, "the amount of the restitution order [or other award of reparation] must have a *reasonable* relationship to the criminal conduct of the offender." *Hart*, 299 Or at 141 (emphasis added).[6] An award under ORS 811.706 facially meets that requirement. In *Martin*, the Supreme Court identified the general policy served by the "hit and run" statutes as follows:

> "the individual and public interest * * * is to penalize a driver who attempts to escape his financial responsibility for damage or attempts to escape criminal or civil prosecution by fleeing the scene of an accident without giving the required information to the other party."

298 Or at 268 (describing the policy behind the former "hit and run" statutes). To be sure, the "hit and run" statutes impose duties on all drivers involved, irrespective of fault or their demonstrated motive to escape financial or other legal liability. But that fact does not alter the goal to be served; the point, at least in significant part, in requiring the exchange of information at an accident scene is to ensure that liability for the damage or injury done can properly attach. As we concluded in *Kappleman*, a damage award under ORS 811.706 requires the trial court to find affirmatively that the defendant caused the accident and was, in that sense, at fault. That predicate determination reinforces the basic policy goal of the criminal offense by ensuring that a defendant incurs the very financial liability that may form part of the incentive

---

[6] In *Hart*, the court questioned whether the constitutional prohibition on "excessive fines" extends to restitution awards. But the court found it unnecessary to decide that point because the court has a responsibility by statute to review any aspect of a criminal sentence for excessiveness. *Hart*, 299 Or at 141. The standard that the court announced in *Hart* thus appears to apply for review of excessiveness under both statutory and constitutional provisions.

for a driver to flee the accident scene. In that way, the damage award imposed as a part of a defendant's sentence amply assists in "causing a defendant to appreciate the relationship between his criminal activity and the damage suffered by the victim." *Dillon*, 292 Or at 179.

 Defendant's final constitutional challenge to the statute is based on the federal Due Process Clause. US Const, Amend XIV ("[N]or shall any State deprive any person of life, liberty, or property, without due process of law[.]"). Relying on *Honda Motor Co., Ltd. v. Oberg,* 512 US 415, 114 S Ct 2331, 129 L Ed 2d 336 (1994), defendant argues that an award under ORS 811.706 deprives a defendant of due process because it is a potentially limitless civil punitive damage award that cannot be meaningfully reviewed post-judgment. We have already rejected some of the predicates for defendant's argument. That is, we have already held in this case that the statute authorizes an award in the nature of criminal restitution, not a civil compensatory award. Moreover, the damage award authorized is for liquidated and readily measurable amounts, not speculative or otherwise open-ended awards. Consequently, *Oberg*'s application in this context is highly questionable. *See generally State v. Moore*, 324 Or 396, 343, 927 P2d 1073 (1996).

But equally to the point, *Oberg*'s due process-based requirement of judicial review is satisfied in this case. On remand in *Oberg*, the Oregon Supreme Court determined that the appropriate standard of review of a civil punitive damage award is whether the award "is within the range that a rational juror would be entitled to award in the light of the record as a whole." *Oberg v. Honda Motor Co.*, 320 Or 544, 549, 888 P2d 8 (1995), *cert den* 517 US 1219 (1996). Such review is not substantially different from the review traditionally available for an award of restitution or a similar monetary exaction: whether the amount imposed bears a reasonable relationship to the criminal conduct of the offender and will serve the goals of rehabilitation and deterrence. *See Hart*, 299 Or at 141. Defendant was entitled to challenge the particular award imposed in this case and to argue that it does not satisfy that standard. Rather than do so, he has limited himself to attacking the facial validity

ofthe statute authorizing the award.[7] The judicial review constitutionally due to defendant was available, however, even if he declined to avail himself of it. *Oberg* requires no more.

Affirmed.

---

[7] Defendant's failure to challenge the particular award imposed is not surprising. The trial court gave defendant the benefit of a full hearing on whether to order defendant to pay Suell for her out-of-pocket vehicle repair expenses. In imposing the $500 amount, the trial court carefully considered the purpose to be served by the award, the appropriate amount to impose in light of that purpose, and defendant's financial circumstances:

"[I]n this case I do think that although the defendant is without employment at the moment because of his physical condition, he will be able to engage in gainful employment in the future and within the period of probation in this case, that it would not be an undue hardship on him to pay some restitution at least in this case.

"Especially if it's set on an installment basis, and to pay restitution or pay damages, however you want to define those, would have a rehabilitative effect on the defendant.

"However, I think that the damages to be awarded need to be construed fairly narrowly in this case or in this situation, and in this case in particular, and, therefore, I'm only going to award $500 to represent the deductible paid by the victim as restitution or as damages in the form of restitution to be paid to the victim."