DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**KEVAN WALLACE ANGLIN,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D22-818

[August 9, 2023]

Appeal from the Circuit Court for the Nineteenth Judicial Circuit, St. Lucie County; Robert L. Pegg, Judge; L.T. Case No. 562020CF000866AXXXXX.

Carey Haughwout, Public Defender, and Elijah Giuliano, Assistant Public Defender, West Palm Beach, for appellant.

Ashley Moody, Attorney General, Tallahassee, and Rachael Kaiman, Assistant Attorney General, West Palm Beach, for appellee.

WARNER, J.

Appellant challenges an order of restitution for damage to sheriff's vehicles after his conviction for attempted aggravated battery on sheriff deputy officers and other charges. We reject his challenge and affirm.

The State charged appellant by information with one count of high speed or wanton fleeing; two counts of aggravated battery with a deadly weapon on a law enforcement officer; and one count of resisting officers without violence. All four charges arise out of the same incident when appellant fled sheriff's deputies in a high-speed car chase and allegedly rammed his truck into their cars.

At trial, the evidence was conflicting as to whether appellant hit the deputies' vehicles, or the deputies hit appellant's vehicle. However, the deputies testified that appellant used his vehicle to ram into their vehicles during the chase. The jury found appellant guilty as charged of high speed and wanton fleeing and resisting without violence. For the two aggravated

battery charges, the jury found appellant guilty of the lesser-included offense of attempted aggravated battery.

The trial court sentenced appellant to a prison term, imposed court costs, and ordered $8,018.85 in restitution for the property damage to the Sheriff's Office's vehicles. Appellant did not object to the ordered restitution at the sentencing hearing.

Later, appellant filed a Florida Rule of Criminal Procedure 3.800(b)(2) motion, requesting a de novo sentencing due to a scoresheet error. Appellant also requested that the restitution be stricken, because he was acquitted of aggravated battery, the charge on which appellant believed restitution had been based. The trial court granted the rule 3.800(b) motion as it pertained to resentencing but declined to strike the restitution or court costs. This appeal of the restitution order follows.

The restitution issue was properly preserved for review. An error in restitution is a sentencing error which may first be raised in a 3.800(b)(2) motion. *See Mesa v. State*, 355 So. 3d 549, 550 n.1 (Fla. 3d DCA 2023) (holding that a challenge to amount of restitution is cognizable under rule 3.800(b)(2)); *see also Jackson v. State*, 983 So. 2d 562, 572 (Fla. 2008) ("[S]entencing errors include . . . errors in orders of probation, orders of community control, cost **and restitution orders**, as well as errors within the sentence itself.") (alteration in original) (emphasis added) (quoting Fla. R. Crim. P. 3.800 court cmt.).

Appellant contends that the jury's decision to convict him for attempted aggravated battery, rather than aggravated battery, demonstrates that they found he did not actually ram his truck into the deputies' vehicles but only attempted to do so. Therefore, appellant argues that the conviction for attempted aggravated battery does not support the restitution order.

The jury was instructed that it could convict appellant of the principal offense of aggravated battery, or instead, the lesser included offense of attempted aggravated battery. The elements of attempted aggravated battery included that appellant "attempted to touch or strike" the deputies against their will, and that appellant used a deadly weapon in attempting the battery. *See* § 777.04(1), Fla. Stat. (2019) ("A person who attempts to commit an offense prohibited by law and in such attempt does any act toward the commission of such offense, but fails in the perpetration or is intercepted or prevented in the execution thereof, commits the offense of criminal attempt.").

2

"[T]he circumstances of the case will determine whether a vehicle is sufficiently closely connected to a person so that the striking of the vehicle would constitute a battery on the person. Thus, this is generally a question of fact for the jury." *Clark v. State*, 783 So. 2d 967, 969 (Fla. 2001). Therefore, an attempted aggravated battery may involve striking the vehicle but not injuring or connecting with the person within that vehicle so as to constitute the crime of aggravated battery. *See V.A. v. State*, 819 So. 2d 847, 849 (Fla. 3d DCA 2002) ("[I]n order to prove the offense of aggravated battery arising out of the defendant's ramming of another vehicle, it is necessary for the State to show that the occupants of the rammed vehicle were at least jostled or moved about within their vehicle.").

In convicting appellant of the lesser included offense, the jury could have found that appellant did intentionally strike the deputies' vehicles with his truck, but he did not batter their persons. The fact that the jury found appellant guilty of attempted aggravated battery rather than the principal offense does not mean the jury found that appellant did not strike and damage the deputies' vehicles. Therefore, we conclude appellant has not shown that the restitution order was based upon conduct for which appellant was acquitted.

Appellant also argues that restitution could not be imposed because the Sheriff's Office was not a "direct victim" of appellant's conduct as contemplated by Florida's restitution statute, which provides:

> (c) The term "victim" as used in this section and in any provision of law relating to restitution means:
>
> 1. Each person who suffers property damage or loss, monetary expense, or physical injury or death as a direct or indirect result of the defendant's offense or criminal episode[.] . . . The term includes governmental entities and political subdivisions, . . . **when such entities are a direct victim of the defendant's offense or criminal episode and not merely providing public services in response to the offense or criminal episode**.

§ 775.089(1)(c)1., Fla. Stat. (2019) (emphasis added).

Previously, state agencies such as a sheriff's office could not be considered victims for purposes of restitution. *See Lewis v. State*, 874 So. 2d 18, 20 (Fla. 4th DCA 2004) ("Because the sheriff's office does not meet the statutory definition of 'victim' it is fundamental error to order

3

restitution to be paid to the sheriff's office."). However, in 2015, the Legislature amended section 775.089 specifically to include governmental entities and political subdivisions when they are "direct victims" of the defendant's conduct. *See* H.B. 115 (2015) Staff Analysis (June 15, 2015) ("The bill amends the definition of 'victim' in s. 775.089(1)(c), F.S., to clarify that the term includes governmental entities and political subdivisions when such entities are a direct victim of the defendant's offense or criminal episode and not merely providing public services in response to the offense or criminal episode.").

As amended, section 775.089(1)(c)1. provides that state agencies, such as the Sheriff's Office here, are considered victims for restitution purposes "when such entities are a direct victim of the defendant's offense or criminal episode **and not merely** providing public services in response to the offense or criminal episode." § 775.089(1)(c)1., Fla. Stat. (2019) (emphasis added). The word "and" in the amended statute creates two requirements: 1) the agency must be a "direct victim" of the crime; and 2) the agency must not be "merely providing public services in response to" the crime. *Id.*

First, the governmental entity must be a "direct victim of the defendant's offense or criminal episode," whereas a "person" under section 775.089(1)(c)1. may recover restitution if he or she is harmed "as a direct or indirect result of the defendant's offense or criminal episode." § 775.089(1)(c)1., Fla. Stat. (2019). We conclude that the Sheriff's Office was a direct victim because its vehicles were damaged, not just as a result of appellant's criminal episode, but directly by appellant's conduct when he struck the deputies' vehicles with his truck.

No case in Florida has interpreted amended section 775.089(1)(c)1. Other courts, however, have considered whether restitution is available for damage to a police vehicle caused by a defendant's criminal conduct. In *State v. Dillon*, 637 P.2d 602 (Or. 1981), the Oregon supreme court affirmed an order of restitution to reimburse law enforcement for patrol car damage sustained when the defendant hit the patrol cars with his own vehicle. *Id.* at 609. Restitution is available in Oregon for pecuniary damages directly caused by a defendant's crime. *Id.* at 608 ("The [restitution] statute authorizes a court to order restitution when a person's criminal activities have resulted in pecuniary damages. In other words, there are three prerequisites: (1) criminal activities, (2) pecuniary damages, and (3) a causal relationship between the two.").

The *Dillon* court found that the defendant's criminal activity was the direct cause of the damage. *Id.* at 608 ("[The defendant] was convicted of

assault in the fourth degree for hitting the police officer with his car, and for criminal mischief for hitting the police car with his own. All of the challenged restitution orders are for damages which resulted from these offenses. Defendant's criminal mischief directly caused the damage to the police car which he bashed.").

Like the defendant in *Dillon*, appellant struck the deputies' patrol cars with his truck during the high-speed chase, creating a direct causal relationship between appellant's criminal activity and the damage to the patrol vehicles. Thus, the Sheriff's Office was a "direct victim" under section 775.089(1)(c)1.

Section 775.089(1)(c)1. also requires a governmental entity show as a second element for restitution that the entity suffered the damage "not merely providing public services in response to the offense or criminal episode." § 775.089(1)(c)1., Fla. Stat. (2019). Here, the damage to the deputies' vehicles was not the type usually sustained by "merely providing public services in response to the offense or criminal episode." *See id.*; *see also State v. Storlie*, 647 N.W.2d 926, 929 (Wisc. Ct. App. 2002) ("While a patrol car is a tool of law enforcement, it is not deployed for the purpose that it be run over and destroyed[.]").

Other courts have recognized that damage to police cars is not a usual cost of law enforcement, and restitution is proper to reimburse police departments for such costs. *See Dillon*, 637 P.2d at 608. In *People v. Barnett*, 654 N.Y.S. 2d 918 (N.Y. App. Div. 1997), the appellate court affirmed a county court order requiring a defendant to pay restitution to reimburse the police for damage which the defendant had caused to a police car, finding that such damage was not a normal cost of providing law enforcement services. *Id.* at 919. The appellate court stated:

> We reject the contention of defendant that [the] County Court erred in ordering him, as part of the sentence, to pay restitution to the New York State Police Department. Contrary to defendant's contention, the restitution did not reimburse the police for the normal operating costs of law enforcement that are voluntarily incurred; instead, it covered the cost of repairing a police car that was damaged as a direct result of defendant's criminal conduct.

*Id.* (internal citations omitted).

This case is unlike *State v. Sequeira*, 995 P.2d 335 (Haw. Ct. App. 2000), on which appellant relies. There, the appellate court held that a

5

trial court could not order a drug trafficking defendant to pay restitution to reimburse the state for "drug buy" money that undercover officers spent to buy drugs from the defendant to obtain evidence of his criminal activity. *Id.* at 336. The appellate court explained, "The costs of investigating and prosecuting an offense are not direct losses for which restitution may be ordered. . . . The government did not 'lose' money as a direct result of [the defendant's] activities; it spent money to investigate those activities." *Id.* at 344 (alteration in original) (quoting *United States v. Salcedo-Lopez*, 907 F.2d 97, 98 (9th Cir. 1990)).

In this case, the damage to the Sheriff's Office's patrol vehicles was the direct result of appellant's criminal conduct. Thus, the Sheriff's Office was "a direct victim of the defendant's offense or criminal episode and not merely providing public services in response to the offense or criminal episode." § 775.089(1)(c)1., Fla. Stat. (2019). We affirm the restitution order.

*Affirmed.*

DAMOORGIAN and KUNTZ, JJ., concur.

\*     \*     \*

***Not final until disposition of timely filed motion for rehearing.***