Argued and submitted April 27, reversed and remanded for reconsideration
October 31, 2001

In the Matter of the Compensation of
Connie Scherer, Claimant.

Connie SCHERER,
*Petitioner,*

*v.*

OREGON VETERANS' HOME
and CIGNA,
*Respondents.*

99-06720; A110619

33 P3d 1071

J. R. Perkins, III, argued the cause and filed the brief for petitioner.

Tracy White argued the cause for respondents. With her on the brief were Deborah L. Sather and Sather, Byerly & Holloway.

Before Edmonds, Presiding Judge, and Armstrong and Kistler, Judges.

KISTLER, J.

## KISTLER, J.

Employer terminated claimant's temporary total disability (TTD) benefits because she refused modified work. The Workers' Compensation Board upheld employer's decision, and claimant seeks review of the Board's order. We reverse and remand for reconsideration.

Claimant is a certified nursing assistant. She suffered a compensable back injury. After a period of bed rest, her treating doctor, Dr. Irvine, released her to light duty work and noted in the release that claimant was "OK to fold laundry." Employer offered claimant modified work folding laundry during the night shift from 10 p.m. to 6 a.m. Claimant declined the work, citing medical reasons unrelated to her back injury that precluded the change in hours. She told employer that she takes medication in the evening for chronic migraine headaches and insomnia that prevents her from working on the night shift.

Employer wrote to Irvine, asking whether claimant could rearrange her schedule and take the sleep-inducing medication after working the night shift. Irvine marked a box labeled "no" on the note and wrote that the suggested change "would be of detriment" to claimant. Claimant did not accept the modified work. Relying on OAR 436-060-0030(5),[1] employer terminated claimant's TTD benefits.

Claimant requested a hearing and argued, as she does on review, that employer misinterpreted the applicable administrative rule. She did not dispute that, under OAR 436-060-0030(5), a worker who declines physician-approved

---

[1] OAR 436-060-0030(5) provides that an insurer or carrier shall stop paying total disability compensation when an injured worker fails to begin modified work if:

"(a) The attending physician has been notified by the employer or insurer of the physical tasks to be performed by the injured worker;

"(b) The attending physician agrees the employment appears to be within the worker's capabilities; and

"(c) The employer has confirmed the offer of employment in writing to the worker stating the beginning time, date and place; the duration of the job, if known; the wages; an accurate description of the physical requirements of the job and that the attending physician has found the job to be within the worker's capabilities."

modified work is not entitled to the continued payment of TTD benefits. She argued that the employment offered in this case was not physician-approved. Although Irvine had noted that she could perform the physical tasks involved in the modified work, he had objected to the shift change because it would be detrimental to her health. In claimant's view, her inability to work at night was a valid basis on which Irvine could conclude that the modified work was not "within [her] capabilities." *See* OAR 436-060-0030(5)(b). She argued that, because Irvine had not approved the work, her failure to accept the job did not disqualify her from receiving TTD benefits. Employer argued below, as it does on review, that the determination whether employment is within a "worker's capabilities" is limited to an evaluation of whether the worker can perform the physical tasks required by the modified work. In employer's view, Irvine's opinion that claimant was "OK to fold laundry" demonstrated that the work was within her capabilities.

The administrative law judge (ALJ) reasoned that the modified work employer offered to claimant was "within [her] capabilities" if she could do the tasks that the work itself entailed. On review, the Board affirmed the ALJ's order. Citing *Roseburg Forest Products v. Wilson*, 110 Or App 72, 75, 821 P2d 426 (1991), it noted that "it is well-settled that [an employer] may properly terminate temporary disability when a claimant refuses a modified job for reasons unrelated to the compensable injury." It then reasoned that, "[i]n this case, claimant has declined to accept modified work because of medication requirements for noncompensable medical conditions." It followed, the Board concluded, that employer had no obligation to continue paying claimant temporary disability benefits.

Because the Board's order turns on its reading of *Wilson*, we begin with that decision. The claimant in *Wilson* began receiving TTD benefits after he suffered a compensable injury. *Wilson*, 110 Or App at 74. The employer eventually offered him modified work and the claimant's physician approved the job. *Id.* However, "[w]hen claimant arrived at the designated job site, he encountered a labor dispute and refused to cross the picket line." *Id.* Employer considered the

claimant's failure to report to work to be a refusal of employment and terminated TTD benefits. *Id.* On appeal, we reasoned:

> "In the absence of a legislative direction to the contrary, TTD benefits are not available if the loss results from other than the compensable injury. When a claimant refuses physician approved modified work under *former* OAR 436-60-030(5), [the] resulting wage loss is not caused by the compensable injury."

*Id.* at 75. Because the claimant's refusal to cross the picket line did not result from the compensable injury, we held that TTD benefits were not available.[2]

■ Since *Wilson*, the Board has applied that decision to explain why factors unrelated to a worker's physical capabilities cannot justify a refusal to accept physician-approved modified employment. *See Glenda Jensen*, 50 Van Natta 1074 (1998) (inability to take modified work because of conflicting child care concerns did not prevent employer from terminating TTD); *Robert E. Dixon*, 48 Van Natta 46 (1996) (inconvenience of securing transportation to modified job site did not prevent authorization to terminate disability benefits); *Antonio Garcia*, 46 Van Natta 862 (1994) (same). In all of those decisions, the issue has been whether declining a job for reasons that are unrelated to a worker's physical capabilities will disqualify the worker from receiving temporary disability benefits. Neither *Wilson* nor the Board's decisions have considered the issue that claimant raises here—whether an employer can cut off a worker's right to receive temporary disability benefits by offering the worker a job that the worker is physically unable to perform.

Not only did *Wilson* not address that specific question, but its reasoning cuts in claimant's favor. *Wilson*'s reasoning is contained in the two sentences quoted above. The first sentence states the general rule that "TTD benefits are

---

[2] We noted that the legislature had provided that the worker would not lose reemployment rights or any vocational assistance if he or she refused physician-approved modified work because of a labor dispute. *Wilson*, 110 Or App at 75-76. We explained that, because the legislature had omitted any reference to disability benefits, those benefits were unavailable if a worker refused to accept modified work for the same reason. *Id.* at 76.

not available if the loss results from other than the compensable injury." *Wilson*, 110 Or App at 75. But that sentence does not identify, with any precision, the degree of proximity that must exist between the "compensable injury" and the "wage loss" before one can be said to "result" from or be caused by the other. The second sentence clarifies that issue. It states that the claimant's "wage loss is not caused by the compensable injury" "when a claimant refuses physician approved modified work." *Id.* Under *Wilson* and the administrative rules, the question whether the wage loss results from the compensable injury turns on whether the physician has approved the modified work pursuant to OAR 436-060-0030(5)(b). We turn to that issue.

The text of OAR 436-060-0030(5) is straightforward. Subsection (a) provides that the employer or insurer must notify the attending physician of the physical tasks to be performed by the injured worker. Subsection (b) provides that the attending physician must then agree that "the employment appears to be within the worker's capabilities." By requiring employers to provide information regarding physical tasks in subsection (a), the structure of the rule indicates that the determination that follows—the physician's evaluation of a worker's capabilities in subsection (b)—is intended to be an examination of *physical* capabilities. *See* ORS 174.010.

Although childcare, labor disputes, or the availability of transportation may affect a worker's employment capabilities generally, those concerns are not within the province of treating physicians or the determination they are asked to make. *See State v. Hval*, 174 Or App 164, 171-72, 25 P3d 958 (2001) (interpretation plausible in the context of statutory scheme favored). As *Wilson* and previous Board opinions confirm, workers' objections to shift changes on those bases are unavailing because they are personal concerns that are unrelated to a claimant's physical capabilities.

By mandating that the employer or insurer in every case provide a description of the "physical tasks to be performed by the injured worker," the legislature has determined that that information is critical for a treating physician to evaluate a worker's physical capabilities, and

ordinarily will be sufficient. The rule, however, does not explicitly limit the determination to that information alone. In asking treating physicians to evaluate a worker's physical capabilities within their field of expertise, OAR 436-060-0030(5) does not say that physicians may consider *only* the "physical tasks to be performed by the injured worker." Subsection (b) asks instead whether, in the doctor's estimation, "the employment" is within the worker's capabilities.

■     The term "employment" is ordinarily understood to encompass more than the discrete physical tasks for which a worker is responsible. *See Webster's Third New Int'l Dictionary,* 743 (unabridged ed 1993) (defining "employment" as the "activity in which one engages and employs his time and energies"); *PGE v. Bureau of Labor and Industries,* 317 Or 606, 611, 859 P2d 1143 (1993). Employment may entail physical requirements beyond the strength, stamina, or skill needed to accomplish the discrete physical tasks alone. At a minimum, nothing in the rule prohibits a physician from considering the time, place, or other circumstances of employment in determining whether the modified work is within the worker's physical capabilities.[3]

In this case, employer asked Irvine whether claimant was physically able to work the night shift and take her medication later. Irvine indicated that it would be detrimental to her health, but the Board never considered whether Irvine's response meant that he disagreed that the work was within claimant's physical capabilities. Rather, the Board found that it did not need to consider claimant's medical claims or Irvine's medical concerns about night work. It reasoned that, because those concerns were unrelated to her compensable injury, they were irrelevant. As explained above, however, the administrative rules are not that narrow; they do not preclude a physician from considering the time, place, and other circumstances of the modified work in

---

[3] If the only issue that the physician was supposed to consider was whether the worker's compensable injury prevented him or her from performing the modified work, a worker who was diabetic could be expected to accept a position as a food taster, or a worker with vertigo could be offered modified work as a window washer. Nothing in the administrative rules requires a physician to blind him or herself to those obvious limitations on a worker's physical ability to perform modified work in determining whether the job is within the worker's capabilities.

determining whether it is within a worker's physical capabilities. Because the Board did not consider whether Irvine's medical concerns meant that he did not agree that the modified work was within claimant's physical capabilities, we reverse the Board's order and remand for consideration of that issue.

Reversed and remanded for reconsideration.