Argued April 29, affirmed August 5, 1976

# STATE OF OREGON, *Petitioner,*
*v.*
# ROBERT DALE STALHEIM, *Respondent.*

552 P2d 829

*W. Michael Gillette,* Solicitor General, Salem, argued the cause and filed briefs for petitioner. With him on the briefs were Lee Johnson, Attorney General, and Rhidian M. M. Morgan, Assistant Attorney General, Salem.

*J. Marvin Kuhn,* Deputy Public Defender, Salem, argued the cause for respondent. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Before O'Connell,* Chief Justice, and McAllister, Denecke,** Holman, Tongue and Howell, Justices.

(For Court of Appeals opinion, see 23 Or App 371)

O'CONNELL, J.

*Chief Justice when case was argued.
**Chief Justice when case was decided.

## O'CONNELL, J.

This case is before us on a petition by the state for review of the decision of the Court of Appeals. *State v. Stalheim,* 23 Or App 371, 542 P2d 913 (1975). Defendant was convicted of criminally negligent homicide after the car he was driving struck an oncoming vehicle and killed two people. The court suspended imposition of sentence and placed defendant on probation, one of the conditions of which was that defendant "make restitution * * * in the sum of $2500.00 * * *." Defendant appealed and the Court of Appeals affirmed the conviction, but remanded the case to the trial court, on the ground that it had improperly imposed restitution as a condition of probation. We granted the state's petition for review in order to clarify the law governing restitution or reparation as a condition of probation.

As a condition of probation, defendant was ordered to pay $2,500 restitution to Mr. Mackey, whose wife and daughter were killed in the accident. Mr. Mackey himself was not involved in the accident; the payments were to compensate him for the loss of his family. There was no formal judicial hearing to determine the amount of Mr. Mackey's loss.[1] It appears that the court accepted the amount of restitution suggested by Mr. Mackey's attorney in a letter to the trial judge and counsel.

ORS 137.540(10) authorizes a sentencing court to require as a condition of probation that the defendant shall

> "Make reparation or restitution to the aggrieved party for the damage or loss caused by [the] offense, in an amount to be determined by the court."

The Court of Appeals, in an opinion written by Judge Fort, held that Mr. Mackey was not "the aggreived party" within the meaning of ORS 137.540(10). Judge Thornton dissented.

---

[1] There was a civil suit filed by Mr. Mackey against defendant pending at the time the criminal proceeding was in progress.

The state contends that the restitution order was within the trial court's discretion to impose conditions of probation upon defendant. It is argued that the trial court's authority to fashion probation conditions appropritate to a particular case is limited only by the requirement that the conditions have a rational relationship to the purposes of probation,[2] and that the conditions are not shocking to one's conscience.

It must be admitted that the statute is drawn in general terms and is, therefore, susceptible to the broad interpretation urged by the state by which the court would be permitted to allow restitution or reparation in any reasonable amount which would be conducive to the defendant's rehabilitation consistent with the protection of the interests of the public. But the statute is equally susceptible to a narrower interpretation, limiting its application both as to the persons entitled to receive benefits under it and as to the character of the reparation or restitution which is to be made.

■ In other jurisdictions, the courts have taken a variety of views ranging from the one extreme limiting restitution to the return of specific property or its value, with recovery limited to the victim of the crime, to the other extreme of permitting compensation for loss, damage or injury to others, not limited to the victim, arising out of the commission of the crime.[3] The acceptance of the broad interpretation of the statute urged by the state presents a variety of difficult legal problems. If the statute is interpreted broadly so as to permit the imposition of unliquidated damages, thus including such losses as pain and suffering, decreased earning capacity, loss of consortium and the

---

[2] The state cites *Barker v. Ireland,* 238 Or 1, 4, 392 P2d 769 (1964), which holds that "[p]robation is granted, withheld, or revoked in the exercise of the judicial discretion of the trial judge, guided by a balancing of considerations of public safety and rehabilitation of persons convicted of crime."

[3] *See Basile v. United States,* 38 A2d 620 (Wash D.C. Mun. Ct. App. 1944).

like, the trial judge will be forced to make evaluations of losses usually reserved to civil juries. In the usual case, the trial judge will not have the benefit of pleadings which frame the issues nor the testimony of witnesses to develop evidence relevent to the loss resulting from the defendant's wrongdoing.[4] Thus, the trial judge is left in the difficult if not impossible position of having to assign a value to a loss he knows little about. While we customarily rely upon the collective intuition of the civil jury to calculate the amount which should be awarded for pain and suffering and other uncertain losses, and although in some civil cases this function is left to the trial judge sitting without a jury, we find it highly inappropriate to assign this task to a judge presiding over a criminal trial.

There are other reasons for removing the adjudication of uncertain losses from the sentencing proceedings. There is a real danger that the defendant may be prejudiced by the introduction of civil damages issues into his criminal trial. At the sentencing proceeding the defendant does not have the benefit of defenses such as contributory negligence or assumption of risk, nor does he receive a jury determination of damages which would be available to him in a civil trial.[5] Further, when faced with the alternative of paying what he might regard as an exorbitant measure of damages or of going to prison, the defendant might hesitate to argue with an award of restitution or reparation no matter how speculative or unfair it might be or however summary the procedure under which it was imposed.

■■ The legal and practical complexities created by a broad interpretation of ORS 137.540(10) prompt us to narrowly construe its terms. We construe the term "restitution" to mean the return of a sum of money, an object, or the value of an object which a defendant

---

[4] *See* Note, 30 Rocky Mt L Rev 215, 216 (1958).

[5] *See People v. Becker,* 349 Mich 476, 84 NW2d 833, 839 (1957). *See also,* Best and Birzon, Conditions of Probation: An Analysis, 51 Geo L J 809, 828 (1963).

wrongfully obtained in the course of committing the crime. "Reparation" is a somewhat broader term which has been defined as "[a] repairing or being repaired; restoration to good condition."[6] We think it is consistent with the concept of "repairing" to construe "reparation" as encompassing only reimbursement for the victim's liquidated or easily measurable damages result:ng from the charged offense. This construction would embrace medical expenses, wages actually (not prospectively) lost, and reimbursement for easily measurable property damage.[7]

■ The damage valuation problems we have mentioned are particularly severe when the loss is suffered, as it was in the present case, by the deceased victim's family. Moreover, when a defendant is ordered to make reparation to persons other than the direct victim of a crime, the rehabilitative effect of making the offender clearly appreciate the injury caused by his offense would, in our opinion, be significantly diluted. Therefore, we construe "aggrieved party" to refer to the direct victim of a crime, and not to other persons who suffer loss because of the victim's death or injury.

■ Though our limited construction of the statute should simplify the task of determining the proper amount of restitution or reparation in a particular case, if there remains some question as to the amount of the victim's loss, the defendant is entitled to a hearing on that issue.[8] Our construction of ORS 137.540(10) is, we believe, consistent with the rehabilitative purpose served by imposing restitution or reparation as a condition of probation. In theory, at

---

[6] Webster's New 20th Century Dictionary (Unabridge Second Edition).

[7] By holding thus, we specifically disapprove the Court of Appeals majority opinion in *State v. Sullivan,* 24 Or App 99, 544 P2d 616 (1976).

[8] Although we have focused in this opinion upon the victim's loss, we do not mean to imply that a judge could not impose restitution or reparation in an amount less than the victim's loss. In any event, the amount of restitution or reparation actually made by a defendant should be set off against any civil judgment arising from the same incident.

least, that purpose is served by impressing upon the offender the loss he has caused and his responsibility to repair that loss as far as it is possible to do so.[9] As indicated above, we feel that the rehabilitative effect would be considerably weakened if instead of requiring compensation for easily perceived damages, the trial court were to force the payment of large and speculative amounts representing pain and suffering, loss of consortium and the like.

We recognize that some courts and commentators have advocated a much broader interpretation of restitution and reparation statutes such as ours, urging that judges should be able to formulate conditions of probation which include the payment of all damages recoverable in a civil trial.[10] However, we believe that the benefits which are claimed for such a broad treatment of our statute are outweighed by the complexities alluded to above.[11]

Because there are a number of policy considerations which are presented by a broad treatment of the statute, we think that it is advisable to leave these for legislative scrutiny.[12] We hold, therefore, that ORS 137.540(10) permits restitution or reparation to the

---

[9] *People v. Lippner,* 219 Cal 395, 399, 26 P2d 457, 458 (1933).

[10] See footnote 1 of the dissenting opinion of Thornton, J., in the Court of Appeals opinion in this case.

[11] Similar concerns are expressed by Judge Schwab in his dissent in *State v. Sullivan,* 24 Or App 99, 105, 544 P2d 616 (1976): "The serious legal problems raised by such a sentence are legion. The defendant is being deprived of property without an opportunity to be heard. Both the defendant and the victim are being deprived of their right to have a jury trial on the civil liability question [footnote omitted]. * * * If there were subsequent civil litigation, would it be possible for the victim to receive double indemnity?

* * * [T]he majority approves joinder of questions of criminal liability with questions of liability for civil damages for trial, but then does not allow a trial on civil liability."

[12] A part of the difficulties might be avoided if criminal and civil liability could both be resolved at one trial, as is done in many civil law countries. *See* Forte, Joinder of Civil and Criminal Relief in Indiana, 7 Notre Dame Lawyer 499, 500 (1932). Such substantial procedural revisions should, of course, be made by the legislature.

victim only and limits recovery to amounts which are readily measurable.

The decision of the Court of Appeals is affirmed.

**TONGUE, J.,** specially concurring.

I concur in the opinion by the majority and in the reasoning upon which it is based, with one exception.

The rule adopted by the majority properly limits "restitution" and "reparation" to " liquidated or easily measurable damages" payable to the "aggreived party," but limits that term to "the direct victim of a crime." I disagree with this further limitation in cases in which the "direct victim" is a child or spouse who has died as a result of a crime.

Thus, if a child or married woman is assaulted and if, as a result, medical expenses are incurred, payment of such expenses could be required as a condition of probation, regardless of whether the bills for such expenses would otherwise be payable by the father or husband of the victim. But if the same victim then died, payment of the same bill for the same medical expenses could not be required.

In my view, it is far more reasonable in cases in which the "victim" of the crime has died as a result of the crime to construe the term "aggrieved party" to include the parents or spouse of the deceased "victim," although still limiting the "restitution" or "reparation" which may be required to actual out-of-pocket expenses, such as those incurred for ambulance, hospital, medical and funeral expenses for which there is a legal responsibility.[1]

The intended purpose of ORS 137.540(10), by its express terms, is to provide "reparation or restitution to the aggrieved party for the damage or loss caused by

---

[1] *Cf.* concurring opinion by Schwab, Chief Judge of the Court of Appeals, which raises the question whether a person who has a cause of action for wrongful death is an "aggrieved party" within the meaning of ORS 137.540(10).

[a crime] * * *." In a homicide, the "aggrieved party" for the purposes of "reparation" or "restitution" is not the "direct victim," who is beyond "restitution" or "reparation." In such a case, the "aggrieved party" is the father or mother of a dead child, the wife of a dead husband, or the husband of a dead wife, who is left not only with "grief," but often with large out-of-pocket expenses for medical and funeral bills for which he or she is legally responsible. I do not believe that such a limited extension of the rule adopted by the majority would result in what the majority refers to as the "legal and practical complexities" created by a "broad interpretation of ORS 137.540(10)."

Because, however, the "restitution" ordered by the trial judge in this case in the sum of $2,500 was not based upon a determination of the actual amount of any such out-of-pocket expenses, but was based solely upon the amount suggested in a letter from the attorney for Mr. Mackey, I agree with the majority that it was improper to require that defendant pay that amount to Mr. Mackey as a condition of defendant's probation.