Argued and submitted November 10, 1980; resubmitted in banc April 9,
affirmed in part; reversed in part and remanded
for resentencing April 13, reconsideration denied June 9,
petition for review allowed July 21, 1981 (291 Or 368)

STATE OF OREGON,
*Respondent,*

*v.*

VIRGIL EUGENE DILLON,
*Appellant.*

(No. 10-80-01096, CA 18267)

626 P2d 959

John Daugirda, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

John C. Bradley, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James M. Brown, Attorney General, John R. McCulloch, Jr., Solicitor General, and William F. Gary, Deputy Solicitor General, Salem.

CAMPBELL, J. PRO TEMPORE.**

Joseph, C. J., filed a dissenting opinion, joined by Thornton and Warren, JJ.

** Appointed to Supreme Court December 1, 1980.

## CAMPBELL, J. PRO TEMPORE.

On December 16, 1979, a Springfield city police officer attempted to stop defendant's vehicle for a traffic infraction. Defendant, a habitual traffic offender with a revoked operator's license, refused to stop. A chase ensued which encompassed a distance of nearly 60 miles at speeds in excess of 100 miles per hour. The defendant's vehicle was eventually boxed in by two Springfield city police cars and one Lane County sheriff's car. The defendant refused to leave his vehicle, as requested by the police officers. Instead, he put his car in reverse, backed up, and hit the Lane County sheriff's vehicle. The defendant was again told to remove himself from his vehicle. Defendant again ignored the demand, and drove his car into one of the police officers, striking him lightly on the knee. At this point, the Lane County deputy fired on defendant. Defendant was struck in the face by a bullet. He was taken to a hospital where he received extensive emergency medical treatment. One of the police cars was also damaged by the gunfire.

Defendant was convicted of assault in the fourth degree, recklessly endangering another, criminal mischief in the first degree, attempting to elude a police officer, and driving while revoked. He appeals from the sentence order requiring him to pay the following items of restitution: (1) $5,381.05 to the state Adult and Family Services Division (Division) for payment of defendant's medical expenses; (2) $426.95 to the Springfield Police Department for damage to the patrol vehicle struck by the gunfire; and (3) $507 to Lane County for damage to the patrol vehicle defendant rammed.

■    The court's power to order restitution is limited by statute. The court may order restitution to be made only to a victim of defendant's criminal activities. ORS 137.106(1). A victim is any person who "has suffered pecuniary damages as a result of defendant's criminal activities." ORS 137.103(4). Pecuniary damages are all special damages "which a person could recover against the defendant in a civil action arising out of the facts or events constituting the defendant's criminal activities." ORS 137.103(2). Criminal activities are any offense for which defendant is convicted or any other criminal conduct which he admits. ORS 137.103(1).

The state contends that, because the medical expenses resulted from the facts and events surrounding defendant's course of criminal conduct, the Division, having paid those expenses, is a victim of defendant's criminal activities and is a proper recipient for payment of restitution. The statute, however, does not readily support this contention. Restitution may appropriately be ordered for special damages which the victim could recover against defendant "in a civil action arising out of the facts or events *constituting"* the crimes which defendant admits or for which he is convicted. (Emphasis supplied.) ORS 137.103(2). This language seems to contemplate civil liability arising out of the elements of the crime, *i.e.,* the facts or events constituting the crime. The state's argument and the statute thus present two opposing questions: Is it sufficient that the victim's loss relate merely to the facts or events *surrounding* the criminal conduct; or must the defendant's criminal conviction or admission establish his civil liability for the loss before restitution can be ordered? Our review of the legislative history indicates the legislature intended the latter standard to apply.

■    Restitution as a sentencing device can be viewed in two conceptually different ways. It can be viewed (1) as a method for summarily awarding a victim civil damages resulting from criminal conduct, or (2) as a sanction imposed *to punish* criminal conduct. The former view implicates the defendant's right to a jury trial in civil cases.[1] That right would exist even if restitution were limited, as is the case with the current Oregon statutes, to special damages. The latter view does not *necessarily* implicate a right to a jury determination. We believe that the "sanction" view was, overall, the one taken by the legislature. That is not to say, however, that the legislature could not have intended the equivalent of a jury finding of civil liability as a precondition to imposition of a sanction of restitution.

When it enacted the present statutes, the legislature was primarily responding to the Supreme Court's suggestion in *State v. Stalheim,* 275 Or 683, 552 P2d 920 (1976), that the laws relating to restitution in Oregon were in need of comprehensive re-examination. In *Stalheim,* the

___

[1] Or Const, Art I, § 17.

Supreme Court posed for itself a choice between a broad or a narrow interpretation of Oregon's then existing restitution statute. Both interpretations viewed restitution as a sanction. The court chose the narrow construction to promote the "rehabilitative purpose served by imposing restitution." 275 Or at 688. Most of the opinion, however, was devoted to setting out the "legal and practical complexities created by [the] broad interpretation." 275 Or at 687. It is here that restitution—a sanction—first became entangled with the concept of civil liability. For example, the court found it "highly inappropriate" to assign to a trial judge presiding over a criminal trial the task of calculating unliquidated damages, something which "we customarily rely upon the collective intuition of the civil jury" to do. 275 Or at 687. The court noted the real danger that the defendant might be prejudiced by "the introduction of civil damages issues" into his criminal trial, and further, that he would not have the benefit of civil defenses or a jury determination of damages. The court also required a hearing and a set-off against any civil judgment. 275 Or at 688, n. 8. Finally, the court alluded to Chief Judge Schwab's dissent in *State v. Sullivan,* 24 Or App 99, 544 P2d 616 (1976), expressing concern over the defendant's *right* "to have a jury trial on the civil liability question * * *." 275 Or at 689, n. 11.

The bottom line of the *Stalheim* decision was to construe the statute narrowly and advance its rehabilitative purpose by limiting the possibility of imposition of a speculative sanction. Along the way, the court implicitly found that the rehabilitative purpose of the statute would be served only if the defendant, in fact, was liable for the victim's damages. At the time the present statutes were enacted *Stalheim* was the latest judicial pronouncement on the propriety of restitution as a criminal sanction. Our review of the legislative history leads us to believe that the legislature viewed the decision as legal authority, not judicial policymaking, and that, by enacting the present restitution statutes, it hoped to resolve the numerous concerns of the court.[2]

[2] The dissent in *State v. Eastman,* 51 Or App 723, 626 P2d 956 (1981), claims that, in enacting these restitution statutes, it was "the legislature's obvious intention to make a full and complete response to the Supreme

■ The statutes now specifically limit restitution to the victim's special damages. *See* ORS 137.103(2),(4).[3] They also provide the defendant with a hearing before the court if he requests one. *See* ORS 137.106(3). Nonetheless, the statutory procedure still does not provide the defendant with all the advantages and protections of a civil trial. The most glaring difference is the omission of a jury. Discussions at the legislative hearings demonstrate both a concern for the defendant's constitutional right to a jury trial in civil cases and a desire to prevent sentencing hearings

---

Court's regrettable decision in *State v. Stalheim*, 275 Or 683, 552 P2d 829 (1976)." Implicit in this statement is the assumption that the legislature viewed *Stalheim* as the dissent does—regrettable. We have found nothing in the legislative history to support that perspective. True, to the extent that the new statutes do not limit restitution to the "direct victim" of the crime, *Stalheim* is effectively overruled. But the court there also expressed its views on a number of other aspects of restitution: limiting restitution to easily ascertained liquidated damages, requiring a set-off against any civil judgment, and providing the defendant an opportunity to be heard. The present statutes include all of these recommendations and, in that respect, codify *Stalheim*. Further, the introductory commentary accompanying House Bill 2012 indicates a purpose to follow *Stalheim:*

"Under subsection (10) of ORS 137.540, convicted persons may be required to make restitution to their victims as a condition of probation. No procedure is specified for setting the amount of restitution or for determining when restitution is or is not appropriate. The absence of statutory guidance has led to litigation most notably *State v. Stalheim*, 275 Or 683, 552 P2d 829 (1976), affirming 23 Or App 371, 542 P2d 913 (1975). *This Article reflects the principles established by the Oregon Supreme Court in Stalheim."* Report of the Judiciary, Proposed Revision Correctional Code 14 (November 1976).

Many of the provisions are noted in the report as having been derived from *Stalheim.*

[3] The dissent in *State v. Eastman, supra* n. 1, overemphasizes the importance of the statute's use of the words "a person" instead of "the victim." An earlier draft did use the words "a victim":

"'Pecuniary damages' means all damages which a victim could recover against the defendant in a civil action arising out of the same facts or event. * * *" 1975-77 Interim Committee on Judiciary, Corrections Subcommittee, Bill File, Vol. 5 (HB 2012, Preliminary Draft No. 1, February 13, 1976).

One *could* interpret the change to "a person" as evincing an intent to merely define and confine restitution to certain types of damages. A more plausible explanation is that the change was made solely to promote internal consistency. A "victim" is defined as a person who has suffered "pecuniary damages." ORS 137.103(4). To then turn around and define "pecuniary damages" as special damages suffered by a "victim" would have been incongruous. Furthermore, the definitional scheme also relies on the definition of "pecuniary damages" to define who the victims are. The dissent's limited interpretation overlooks this crucial function. The holding of *State v. Stalheim, supra* n. 1, was to narrowly define who the recipients of restitution could be; the issue was ripe for review and clarification by the legislature.

from turning into full scale civil trials. The hearing procedure was viewed as adequate, however, where the criminal conviction would serve to collaterally estop the defendant on the issue of liability. Tape recording, Interim Committee on Judiciary, September 9, 1976, Side I at 872 ff.[4] The hearing would primarily serve the purpose of determining the amount of special damages, making the process relatively uncomplicated. From this policy of avoiding an extensive proceeding in the midst of sentencing, we conclude the legislature intended restitution to be ordered only when the criminal conviction establishes the defendant's liability for the loss, or when the defendant admits liability.

[4] At its September 9, 1976, hearing, the Interim Committee on Judiciary heard testimony from James Hennings of the Metropolitan Public Defender's office. Mr. Hennings was concerned that the restitution bill sponsored by the Interim Committee (HB 2012) would force defense attorneys to become civil trial lawyers at the time of sentencing. The response of some committee members was as follows:

"SEN. COOK asked if a conviction or a plea would in every case establish liability for repayment of damages. Is the committee just faced with the question of determining quantity of damages?

"MR. HENNINGS said that would be a major area, although there could be an argument in some types of cases whether or not it was an aggravation of preexisting injury. Really we are talking about damages in most cases.

"Senator Cook asked if there could be a crime that a person could be convicted of which would not be collateral estoppel on the issue of liability.

"MR. BROMKA said that if there are any cases in which the amount of restitution doesn't cover the full amount of damages, and that would probably be in most cases, if the injured party wants to sue under civil action, this draft would allow that.

"Senator Cook said the reason he asked is that if there would be a case where the defendant would not be collaterally estopped on the question of liability then maybe the hearing procedures are not adequate.

"Representative Frohnmayer referred to a California case, *Teitelbaum Furs, Inc. v. Dominion Insurance Co.* [followed in Oregon in *Casey v. N. W. Security Ins. Co.,* 260 Or 485, 491 P2d 208 (1971)], where you have criminal prosecution first and the quantum of proof is beyond a reasonable doubt, that would ipso facto establish more than adequately the issue of liability. He said he could not think of a kind of crime where conviction would not be collateral estoppel on the issue of liability.

"Senator Cook suggested that if there is any doubt on the issue of liaility they should clean it up so they wouldn't have to worry about what the courts will do. He suggested they specify somewhere that the defendant's conviction would collaterally estop on the issue of liability so that we [*i.e.,* the courts when ordering restitution] only have to worry about the amount of damages." (Comm. Minutes supplemented by transcription from tape recording.)

In apparent response to Senator Cook's suggestion, Representative Frohnmayer made a motion that Section 6 of the bill be explicit that a judgment against a defendant in a criminal action act upon the doctrine of collateral estoppel to

■ In this case, the Adult and Family Services Division has paid more than $5,000 in medical expenses. It has suffered a loss which it probably could recover in a civil suit against defendant. The defendant's criminal convictions, however, do not establish his liability for the items of special damages the Division asserts. The Division's loss results from defendant's possession of a welfare card and from his having been brought to a hospital in need of medical treatment. Its claim against defendant rests on a quasi-contractual footing. The requisite relationship between the numerous crimes for which defendant was convicted and his liability for the medical expenses incurred because of his injury is missing. Defendant would have been convicted had he not been shot. The fact that he was shot does not increase his liability for his criminal conduct. It would be quite possible for defendant to be guilty of these crimes, and yet not be liable for the medical expenses. In a civil trial he could very well have defenses available to him which would have been irrelevant to the criminal charges.

We vacate the order requiring defendant to make restitution to the Adult and Family Services Division. For similar reasons we also vacate the restitution order relating to the Springfield patrol vehicle struck by gunfire.

■ Defendant was charged with and convicted of criminal mischief in the first degree for intentionally damaging a Lane County Sheriff's Office patrol vehicle. The order to make restitution to Lane County in the amount of $507 was proper.

■ Defendant also argues the trial court erred in imposing consecutive sentences. There was no error. *State v. Jones,* 250 Or 59, 440 P2d 374 (1968).

---

establish liaibility for personal injury and property damage in a civil action. ORS 137.109(2) now provides:

"If a conviction in a criminal trial necessarily decides the issue of a defendant's liability for pecuniary damages of a victim, that issue is conclusively determined as to the defendant if it is involved in a subsequent civil action."

This provision clearly does not say that the criminal conviction must establish the defendant's liability before restitution can be ordered. The comments by Senator Cook and Representative Frohnmayer, however, indicate that that is one of the things they had in mind.

Affirmed in part; reversed in part and remanded for resentencing.

**JOSEPH, C. J.,** dissenting.

I dissent for the reasons stated in my dissent in *State v. Eastman,* 51 Or App 723, 626 P2d 956 (1981). In this case, as in that case, a defendant who patently was *the* cause of all the expenses which were incurred because of "the facts *or events* constituting" his crimes is given the benefit of the results of an extraordinarily rigorous analysis,[1] which substantially ignores the policy of the statute, as well as its words.

**THORNTON, J.** and **WARREN, J.** join in this dissent.

---

[1] Perhaps not so extraordinary. "Comparable only to the Supreme Court's analysis in *State v. Stalheim*" would be the better phrase — but that would not be entirely fair to the majority here, for in this case the majority deals with the statute *judicially.* The majority opinion in *Stalheim,* on the other hand, consists in the main of nothing but *legislative* policy ideas disguised as legal reasoning.