# In re C.W.M.

C.P. of Carbon County, no. 155 JV 2005.

*Michael S. Greek, assistant district attorney,* for Commonwealth.
*Joseph D. Perilli,* for defendant.

NANOVIC, *P.J.,* April 21, 2006—At issue in these proceedings is whether a juvenile court has the authority to order an adjudicated delinquent child to pay restitution to a co-participant in the underlying crimes, who was never charged with or convicted of any of the crimes involved. We state the relevant facts as follows:

## FACTS AND PROCEDURAL BACKGROUND

During the evening of December 10 and the early morning hours of December 11, 2004, the juvenile who is the subject of these proceedings (C.W.M.) and three of his friends, all minors, attended a party in Lehigh Township, Carbon County, Pennsylvania, at which all four consumed alcohol. After leaving the party, C.W.M. and M.R., one of C.W.M.'s three friends, discussed going for a joy ride. They invited their two other friends to join them.

The four stole an automobile from a local garage belonging to an acquaintance of C.W.M.'s family. C.W.M. was the driver, with M.R. sitting in the front passenger seat and the two others in the rear seat. After traveling seven to eight miles, the vehicle was involved in a one-

car accident in which M.R. sustained serious bodily injuries.

The police charged C.W.M. as a juvenile with the following nine offenses:

"Count 1: Driving under the influence of alcohol—75 Pa. C.S. §3802(e) (B.A.C. .07percent) (misdemeanor)

"Count 2: Aggravated assault by vehicle while driving under the influence—75 Pa.C.S. §3735 (felony 2)

"Counts 3-5: Recklessly endangering another person— 18 Pa.C.S. §2705 (one count for each passenger) (misdemeanor 2)

"Count 6: Accident involving death or personal injury—75 Pa.C.S. §3742.1 (with M.R. as the injured party) (felony 3)

"Count 7: Reckless driving—75 Pa.C.S. §3736 (summary)

"Count 8: Careless driving—75 Pa.C.S. §3714 (summary)

"Count 9: Drivers required to be licensed—75 Pa.C.S. §1501(a) (summary)."

Pursuant to a plea agreement, C.W.M. admitted to committing the offenses described in Counts 1 and 6, with the remaining counts to be dismissed. As part of the plea agreement, C.W.M. agreed to pay restitution to the victims of the crimes. (See stipulation dated 9/ 12/2005.)

In addition to the foregoing offenses charged in these proceedings, in a separate case docketed to no. 124 JV

2005, C.W.M. was charged with the following three offenses related to the taking of the automobile:

"Count 1: 18 Pa.C.S. §3921(a)—theft by unlawful taking or disposition

"Count 2: 18 Pa.C.S. §3925(a)—receiving stolen property

"Count 3: 18 Pa.C.S. §3928(a)—unauthorized use of automobile and other vehicles."

C.W.M. has previously admitted to the crime of receiving stolen property, been adjudicated delinquent, and been directed to pay restitution in the amount of $3,565 for property damage to the vehicle.

Because there was insufficient information to decide the issue of restitution at the time of adjudication in this matter, a subsequent hearing was scheduled for these purposes. At this hearing, the Commonwealth sought restitution on behalf of M.R. for the costs of his medical and hospital treatment, a sum totaling $230,945.94. M.R.'s injuries which necessitated these expenses were a direct result of the motor vehicle accident on December 11, 2004. Neither M.R. nor either of the other two juveniles involved in the theft of the vehicle were charged criminally for any of their conduct surrounding the taking of the vehicle and subsequent accident.

C.W.M. is now 18 years of age (D.O.B. 9/14/87), in 12th grade, and in good health. He was 17 at the time of the accident. His only assets of substance are approximately $200 in a checking account and $1,000 in a certificate of deposit that had been set aside for him by his family for college. He presently is unemployed but is

seeking a job. In his last job, he made approximately $8.50 an hour working 10 to 15 hours a week. Upon graduation he hopes to attend college.

## DISCUSSION

### A. *Legality of Awarding Restitution to a Criminal Participant*

The threshold question we must decide is whether M.R., as an uncharged criminal participant in the commission of a crime in which he was injured, is legally eligible for restitution.[1] This first issue to a slightly different degree was raised in *In the Interest of J.E.D.,* 879 A.2d 288 (Pa. Super. 2005), *appeal denied,* 586 Pa. 713, 889 A.2d 1216 (2005), but never decided, the appellate court finding that the issue had been waived. *Id.* at 293 n.7 (arguing that the trial court should have allocated a portion of the insurance paid for the victim's medical expenses to the victim because he was a co-participant). We are unaware of any other court in this Commonwealth that has addressed the issue in either a juvenile or adult proceeding.

Contained within this issue is the question of whether M.R. is a victim. That is, can there be restitution if there is no victim? Put another way, is only a victim entitled to restitution? And if so, who is a victim? More to the point, is a person injured during the commission of a crime

---

1. We refer to M.R. throughout this opinion as a "co-participant" rather than as an "accomplice" or "co-conspirator" in the alleged crimes since M.R. has not been charged nor found guilty of any of the underlying crimes.

definitionally a victim, even if he participated in the crime but was not charged? The question is peculiarly a legal one requiring an examination of the legal authority to award restitution. *In the Interest of M.W.,* 555 Pa. 505, 510 n.4, 725 A.2d 729, 731 n.4 (1999) (explaining that a challenge to the trial court's authority to impose restitution concerns the legality of the sentence whereas a challenge that the amount of restitution ordered is excessive involves a discretionary aspect of sentencing).

"[A]n order of restitution must be based upon statutory authority." *Id.,* 555 Pa. at 511, 725 A.2d at 731; *Commonwealth v. Harner,* 533 Pa. 14, 17, 617 A.2d 702, 704 (1992). In juvenile proceedings this authorization is found in 42 Pa.C.S. section 6352(a)(5) of the Juvenile Act which provides:

"Section 6352. Disposition of delinquent child

"(a) General rule.—If the child is found to be a delinquent child the court may make any of the following orders of disposition determined to be consistent with the protection of the public interest and best suited to the child's treatment, supervision, rehabilitation, and welfare, which disposition shall, as appropriate to the individual circumstances of the child's case, provide balanced attention to the protection of the community, the imposition of accountability for offenses committed and the development of competencies to enable the child to become a responsible and productive member of the community: . . .

"(5) Ordering payment by the child of reasonable amounts of money as fines, costs, fees or *restitution* as

deemed appropriate as part of the plan of rehabilitation considering the nature of the acts committed and the earning capacity of the child, including a contribution to a restitution fund. The president judge of the court of common pleas shall establish a restitution fund for the deposit of all contributions to the restitution fund which are received or collected. The president judge of the court of common pleas shall promulgate written guidelines for the administration of the fund. Disbursements from the fund shall be made, subject to the written guidelines and the limitations of this chapter, at the discretion of the president judge and used to reimburse crime victims for financial losses resulting from delinquent acts. For an order made under this subsection, the court shall retain jurisdiction until there has been full compliance with the order or until the delinquent child attains 21 years of age. Any restitution order which remains unpaid at the time the child attains 21 years of age shall continue to be collectible under section 9728 (relating to collection of restitution, reparation, fees, costs, fines and penalties). . . ." (emphasis added) This section, unfortunately, does not answer the question before us.

By contrast, in criminal proceedings the statutory authorization for imposing restitution defines several significant terms. Under this system, "[t]he right to impose restitution is statutorily grounded in two provisions, 42 Pa.C.S. §9721(c) and 18 Pa.C.S. §1106(a). The Sentencing Code, 42 Pa.C.S. §9721(c), provides that 'the court shall order the defendant to compensate the victim of his criminal conduct for the damage or injury that he sus-

tained.' 42 Pa.C.S. §9721(c). The ordering of restitution is further defined by 18 Pa.C.S. §1106(a). Section 1106(a) sets forth the general rule that 'upon conviction for any crime . . . wherein the victim suffered personal injury directly resulting from the crime, the offender shall be sentenced to make restitution in addition to the punishment prescribed therefore.' 18 Pa.C.S. §1106(a); *Commonwealth v. Opperman, supra,* 780 A.2d [714,] 718 [(Pa. Super. 2001)]." *Commonwealth v. Keenan,* 853 A.2d 381, 383 (Pa. Super. 2004).

The term "restitution" is defined as:

"The return of the property of the victim or payments in cash or the equivalent thereof pursuant to an order of the court." 18 Pa.C.S. §1106(h).

An "offender" is:

"Any person who has been found guilty of any crime." 18 Pa.C.S. §1106(h).

The meaning of "victim" is the same "[a]s defined in section 479.1 of the Act of April 9, 1929 (P.L. 177, no. 175), known as The Administrative Code of 1929. The term includes the Crime Victim's Compensation Fund if compensation has been paid by the Crime Victim's Compensation Fund to the victim and any insurance company that has compensated the victim for loss under an insurance contract." 18 Pa.C.S. §1106(h).

Footnoted in this last definition is 71 P.S. §180-9.1, which has been repealed, and in its place is the Crime Victims Act, 18 P.S. §11.101 et seq., which provides the following relevant definitions:

"The following words and phrases when used in this act shall have the meanings given to them in this section unless the context clearly indicates otherwise: . . .

" 'Direct victim.' An individual against whom a crime has been committed or attempted and who as a direct result of the criminal act or attempt suffers physical or mental injury, death or the loss of earnings under this act. The term shall not include the alleged offender. The term includes a resident of this Commonwealth against whom an act has been committed or attempted which otherwise would constitute a crime as defined in this act but for its occurrence in a location other than this Commonwealth and for which the individual would otherwise be compensated by the crime victim compensation program of the location where the act occurred but for the ineligibility of such program under the provisions of the Victims of Crime Act of 1984 (Public Law 98-473, 42 U.S.C. §10601 et seq.). . . .

" 'Victim.' The term means the following:

"(1) A direct victim.

"(2) A parent or legal guardian of a child who is a direct victim, except when the parent or legal guardian of the child is the alleged offender.

"(3) A minor child who is a material witness to any of the following crimes and offenses under 18 Pa.C.S. (relating to crimes and offenses) committed or attempted against a member of the child's family:

"Chapter 25 (relating to criminal homicide).

"Section 2702 (relating to aggravated assault).

"Section 3121 (relating to rape)." 18 P.S. §11.103.

While the standards by which a decision whether to award restitution, and in what amount, clearly differ in juvenile and criminal proceedings (*In the Interest of R.D.R.,* 876 A.2d 1009, 1016 (Pa. Super. 2005) (quoting *Commonwealth v. S.M.,* 769 A.2d 542, 544 (Pa. Super. 2001), *appeal denied,* 567 Pa. 741, 788 A.2d 375 (2001))), we can discern no substantial difference between what restitution consists of or its purpose under the two systems. This is especially true when comparing juvenile restitution with restitution imposed as a condition of probation or parole.

"In the context of a criminal case, restitution may be imposed either as a direct sentence, 18 Pa.C.S. §1106(a), or as a condition of probation, 42 Pa.C.S. §9754. When imposed as a sentence, the injury to property or person for which restitution is ordered must directly result from the crime. See 18 Pa.C.S. §1106(a); *Harner,* 533 Pa. at 21, 617 A.2d at 704." *In the Interest of M.W.,* 555 Pa. at 511, 725 A.2d at 732. "To determine the correct amount of restitution, a 'but for' test is used—damages which occur as a direct result of the crime are those which should not have occurred but for the defendant's criminal conduct." *Commonwealth v. Gerulis,* 420 Pa. Super. 266, 288, 616 A.2d 686, 697 (1992), *appeal denied,* 535 Pa. 645, 633 A.2d 150 (1993).

When imposed as a condition of probation or parole, the court has the authority and discretion to make the defendant account for all direct and indirect damages caused by his conduct. *Harner,* 533 Pa. at 22-23 and n.3, 617 A.2d at 707 and n.3 ("the broader discretion granted

to a sentencing court that chooses to impose restitution as a condition of parole, 42 Pa.C.S. §9754(c)(8), vests the court with an equally broad power to determine what the fruits of the crime are."); see also, *Commonwealth v. Kelly*, 836 A.2d 931 (Pa. Super. 2003) (discussing the distinction between a direct and an indirect loss in the context of the crime of receiving stolen property (RSP): the value of the property received by the offender is a direct loss; when, however, there is no evidence that the recipient of the stolen property was the one who broke into a truck from which the property was taken, the damage to the truck is an indirect and not a direct loss of the crime of RSP); see also, *Harner, supra* (holding that even though the costs of private investigators, legal fees and expenses for trips to Louisiana incurred by a father in trying to locate children taken by their mother who was convicted of interference with custody of children, 18 Pa.C.S. §2904, were not directly caused by the mother's conduct in violating section 2904, being neither an essential element of the crime nor a loss that naturally flowed from the conduct forming the basis of the crime for which the mother was convicted, and were not properly imposed as restitution as part of a direct sentence, such costs were the proper subject of restitution as a condition of probation). "Thus, the requirement of a nexus between the damage and the offense is relaxed where restitution is ordered as a condition of probation." *In the Interest of M.W.*, 555 Pa. at 512, 725 A.2d at 732.[2]

---

2. Even then, the connection cannot be speculative or overly tenuous. "[R]estitution is permissible only as to losses flowing from the conduct for which the defendant has been held criminally accountable." *Commonwealth v. Mourar*, 349 Pa. Super. 583, 608, 504 A.2d

As between these two measures of restitution in the criminal system, the Pennsylvania Supreme Court concluded:

"As is apparent from the face of section 6352, the rehabilitative policy of the Juvenile Act's restitution provision corresponds to that which supports the imposition of restitution as a condition of probation in a criminal case. Section 6352, unlike the provision of the Crimes Code providing for restitution as a condition of sentence, does not contain language specifically requiring that the loss or injury be a direct result of the juvenile's wrongful conduct. Consistent with the protection of the public interest and the community, the rehabilitative purpose of the Juvenile Act is attained through accountability and the development of personal qualities that will enable the juvenile offender to become a responsible and productive member of the community. See 42 Pa.C.S. §6301(b)(2). Thus, the policies underlying the Juvenile Act and its restitution provision, as well as the plain language of section 6352, serve to invest the juvenile court with a broad measure of discretion to apportion responsibility for damages based upon the nature of the delinquent act and the earning capacity of the juvenile." *In the Interest of M.W.,* 555 Pa. at 512, 725 A.2d at 732-33.

Because of this similarity we believe it appropriate, as did the Supreme Court in *In the Interest of M.W.,* to con-

197, 211 (1986) (Johnson, J., concurring and dissenting) (quoting *Commonwealth v. Cooper,* 319 Pa. Super. 351, 356, 466 A.2d 195, 197 (1983)), *vacated on other grounds,* 517 Pa. 83, 534 A.2d 1050 (1987). "This is based upon the rationale that due process of law is denied when the losses for which restitution has been imposed did not arise from the very offense for which the defendant was convicted." *Id.*

sider the meaning of restitution in criminal proceedings as a guide to answering the threshold question before us. These statutes tell us what restitution is, that only a victim is eligible to receive restitution, that a victim is any person who suffers injury as the result of a crime, and that the only person injured by a crime who is ineligible to receive restitution is one who has been convicted of committing the crime. Absent from this exclusion is any reference to a co-participant. Compare 18 U.S.C. §3663(a)(1)(A) (federal restitution statute preventing criminal participants from being defined as victims for certain offenses); Or. Rev.Stat. §137.103(5) (2006) (Oregon restitution statute stating " 'victim' does not include any co-participant in the defendant's criminal activities."); Utah Code Annotated §76-3-201(e)(ii) (2005) (Utah restitution statute stating " 'Victim' does not include any co-participant in the defendant's criminal activities."); see also, *State v. Clinton,* 890 P.2d 74, 75 (Ariz. 1995) (trial court improperly refused to order an adult offender to pay restitution to unindicted participant victim; state restitution statute is not limited to only *innocent* victims but benefits *all* victims).

In accordance with the foregoing, as to the first issue before us we find that an uncharged co-participant injured in the commission of a crime is eligible to receive restitution and that, therefore, the imposition of restitution in this case would be lawful.[3] This conclusion holds

---

3. It is also not insignificant that C.W.M. agreed to the payment of restitution for M.R.'s injuries as part of a negotiated plea agreement. See *In the Interest of M.W.,* 555 Pa. 505, 513, 725 A.2d 729, 733 (1999) (holding, in part, that a defendant's voluntary decision to pay restitu-

only that restitution may be awarded to a co-participant, not that it must be, or should be, the decision on whether restitution will be awarded being one for the court in its exercise of discretion, having in mind the primary purpose of restitution: rehabilitation of the juvenile.

"As a sentence, or a condition of sentence, imposed following a criminal conviction, an order of restitution is not an award of damages. . . . While the order aids the victim, its true purpose, and the reason for its imposition, is the rehabilitative goal it serves by 'impressing upon the offender the loss he has caused and his responsibility to repair that loss as far as it is possible to do so.' *State v. Stalheim,* 275 Or. 683, 689, 552 P.2d 829, 832 (1976); see *State v. Mottola,* 84 N.M. 414, 504 P.2d 22 (1972). Thus, a court's concern that the victim be fully compensated should not overshadow its primary duty to promote rehabilitation of the defendant." *Commonwealth v. Galloway,* 302 Pa. Super. 145, 161, 448 A.2d 568, 576 (1982) (quoting *Commonwealth v. Fuqua,* 267 Pa. Super. 504, 508, 407 A.2d 24, 26 (1979)); see also, *Commonwealth v. Mourar,* 349 Pa. Super. 583, 604, 504 A.2d 197, 208 (1986) (en banc) (explaining that restitution is not intended to be a substitute for a civil remedy, is not an award of damages—the two having different objectives, and that a sentence of restitution cannot be enforced by the victim but only by the district attorney in the criminal courts), *vacated on other grounds,* 517 Pa. 83, 534 A.2d 1050 (1987).

---

tion as part of a negotiated plea agreement supported the propriety of the restitution order).

## B. *Propriety of Restitution*

Having found that restitution may be awarded to M.R., we must now determine whether an order of restitution is appropriate in this case and, if so, in what amount. An award of restitution under the Juvenile Act, unlike under either the Crimes Code or Sentencing Code, is uniquely discretionary with the court, both as to the decision to award restitution and as to the amount of restitution awarded.[4] In exercising this discretion, the court must consider four mandatory criteria:

"(1) The amount of loss suffered by the victim; (2) The fact that defendant's action caused the injury; (3) The amount awarded does not exceed defendant's ability to pay; [and] (4) The type of payment that will best serve the needs of the victim and the capabilities of the defendant." *In the Interest of Dublinski,* 695 A.2d 827, 829 (Pa. Super. 1997) (quoting *Commonwealth v. Valent,* 317 Pa. Super. 145, 149, 463 A.2d 1127, 1128 (1983)).

Ultimately, the decision rests on the court's assessment of whether a properly structured order of restitution will promote the development and rehabilitation of the juvenile into a responsible, law-abiding individual. To accomplish these ends, "[t]he policies underlying the Juvenile Act and the plain language of section 6352 in-

---

4. Restitution under section 1106(c) of the Crimes Code, 18 Pa.C.S. §1106(c), and section 9721(c) of the Sentencing Code, 42 Pa.C.S. §9721(c), is mandatory, without regard to the offender's ability to pay. *Commonwealth v. Colon,* 708 A.2d 1279, 1280 (Pa. Super. 1998). "Only upon default is defendant's ability to pay to be considered. 42 Pa.C.S. §9730." *Id.* at 1284.

vest the juvenile court with a broad measure of discretion to apportion responsibility for damages based upon the nature of the delinquent act and the earning capacity of the juvenile." *In the Interest of R.D.R.*, 876 A.2d at 1014.

As to C.W.M.'s earning capacity, taking into account his "mental ability, maturity and education; [his] work history . . . ; the likelihood of [his] future employment and extent to which [he] can reasonably meet a restitution obligation; the impact of a restitution award on [his] ability to acquire higher education and thus increase [his] earning capacity; and [his] present ability to make restitution" (*In the Interest of Dublinski*, 695 A.2d at 830), we believe that C.W.M. has the ability to earn money and to pay restitution and that an order requiring regular, fixed payments to compensate for M.R.'s loss is an important means of making C.W.M. understand and bear the consequences of his conduct, part of the process of rehabilitation. We further believe, after considering the circumstances of the accident and the extent of losses suffered by M.R., that the injuries to M.R. were not intended; that C.W.M. did not act alone, M.R. and two other persons having also participated in the crimes which caused M.R.'s injuries; and that C.W.M. has already been ordered to pay restitution for property damage in the amounts of $3,565 (in the related case docketed to no. 124 JV 2005) and $1,352.50 (in an unrelated case docketed to no. 191 JV 2005),[5] that an award of restitution in

_____

5. In this case, C.W.M. was ordered to pay restitution for property damage caused under circumstances similar to those which occurred here—damage to a stolen vehicle taken for a joy ride on August 20,

the amount of $5,000, with minimum monthly payments of $100, is both reasonable and appropriate, and within his means.

The periodic and continuing nature of these payments will remind C.W.M. that he will be held accountable for his conduct and its effects on M.R., and that one of these consequences is financial. At the same time, we believe the amount of these payments will not threaten C.W.M.'s intent to attend college, a goal we hope C.W.M. will keep. By also holding C.W.M.'s parents potentially responsible, as we intend to do, for unpaid restitution in an amount not to exceed the statutory limit[6] in the event C.W.M. fails to pay the amount of restitution ordered by age 21, C.W.M.'s parents have an incentive to check on their son's progress and to encourage his compliance.

In language relevant to the form and type of payments we intend to order, the court in *In the Interest of J.E.D.* quoted the trial court as follows:

"[T]he $19,377.95 ordered as restitution, although a substantial amount for a [17]-year-old, may be paid off over a period of years. Pursuant to 42 Pa.C.S. §6352 (a)(5), the court has the authority to retain jurisdiction over the child until the restitution is paid in full or the child reaches the age of 21. If the child reaches the age of 21 prior to satisfying the restitution debt, the court may continue to collect any unpaid amount. 42 Pa.C.S. §9728. As long as the amount of restitution is related to

---

2005. In that case, C.W.M. was adjudicated delinquent for criminally conspiring to commit theft by the unlawful taking of moveable property, 18 Pa.C.S. §3921(a).

6. 23 Pa.C.S. §§5503 and 5505.

the harm suffered by the victim, §§6352(a)(5) and 9728 permit the court to set a monetary amount that, although it may be currently [non]payable in a lump sum, may be paid off over time." *Id.,* 879 A.2d at 292 (also ordering that the juvenile's parents would be held responsible for restitution in the event the juvenile failed to make the required payments). In *In the Interest of J.E.D.* the Superior Court further cited with approval the trial court's recognition that the juvenile's ability to pay would increase over time, an observation equally applicable here. *Id.* at 292.

## CONCLUSION

The rehabilitative policies underlying the Juvenile Act—focusing first on restitution's effect on the offender, and encompassing within its grasp all victims, not only innocent victims—combined with C.W.M.'s conduct being a direct cause of M.R.'s injuries and C.W.M.'s agreement to make reparation,[7] all justify an order of restitution. At the same time, M.R.'s participation in the criminal episode which caused his injuries, together with two other individuals, none of whom have been held legally accountable for their conduct; the unintended na-

---

7. "Restitution and reparation mean different things. Restitution ordinarily refers to compensation for the wrongful taking of property, reparation, to compensation paid for injury or damage. Section 1106 of the Crimes Code uses the term restitution to describe both types of compensation. Section 1354(c)(8) of the Sentencing Code, however, specifically refers to restitution or reparation. In this opinion the term restitution refers to both restitution and reparation." *Commonwealth v. Fuqua,* 267 Pa. Super. 504, 507 n.5, 407 A.2d 24, 26 n.5 (1979); see also, *Commonwealth v. Walton,* 483 Pa. 588, 595 n.10, 397 A.2d 1179, 1183 n.10 (1979) (to the same effect).

ture of M.R.'s injuries; the magnitude of the damages sustained by M.R.; C.W.M.'s limited resources and separately existing obligation to make restitution to others—including C.W.M. alone being held responsible for restitution for the property damage to the car in which M.R. was injured; and the possibility of compensation being paid by the Crime Victim's Compensation Fund,[8] convince us that while C.W.M. has a responsibility for which he should be properly held accountable, ordering restitution for the full amount of actual damages sustained by M.R. would disproportionately saddle C.W.M. with a debt he cannot afford, the consequences of which would be punitive, not rehabilitative. Instead, restitution in the amount of $5,000, subject to the terms previously stated, accounts not only for C.W.M.'s ability to pay, but also for the nature and circumstances of the crime, including the responsibility of others who have not been required to share in the payment of restitution.

---

8. At the time of the restitution hearing, the Commonwealth indicated that application had been made on behalf of M.R. to the Crime Victim's Compensation Fund and that although some assistance was anticipated from this source, the exact amount was unknown.