BRETHREN MUTUAL INSURANCE COMPANY, Appellee

v.

Cynthia McKERNAN f/k/a Cynthia Strobridge; Pamela Gardner and Wanda Cooley, as Co–Administratrixes of the Estate of Joseph M. Gardner, deceased; Pamela Gardner and Wanda Cooley, as Co-guardians of the Estate of Morgan Joseph Gardner, a Minor, and Pamela Gardner and Wanda Cooley, as Co–Guardians of the Estate of Erica Elaine Gardner, a Minor, Appellant.

Superior Court of Pennsylvania.

Argued May 15, 2008.
Filed Nov. 18, 2008.

**206**

Daniel J. Barrett, Athens, for appellant.

Bryon R. Kaster, Camp Hill, for appellee.

BEFORE: FORD ELLIOTT, P.J., MUSMANNO, LALLY–GREEN, BENDER, BOWES, PANELLA, DONOHUE, SHOGAN and ALLEN, JJ.

OPINION BY PANELLA, J.:

¶ 1 Appellant, Cynthia McKernan, appeals from the order entered on May 5, 2005, in the Court of Common Pleas of Bradford County, which granted the Motion for Summary Judgment of Appellee, Brethren Mutual Insurance Company. In granting summary judgment, the trial court, in a decisive memorandum, held that Pennsylvania public policy prohibits insurance coverage for an order of restitution imposed pursuant to a criminal conviction. After a careful review, we affirm.

¶ 2 The essential facts underlying the current litigation in this case are undisputed. On February 1, 1999, a heated argument ensued between McKernan[1] and her then boyfriend, Joseph Gardner, the decedent. At some point during the argument, McKernan grabbed a knife, and in an effort to scare Gardner away from her, swung it. Unfortunately, the knife struck Gardner, resulting in his death.

¶ 3 As a result of this incident, McKernan was charged with voluntary

---

1. At all relevant times, McKernan's legal name was Cynthia Strobridge.

manslaughter,[2] voluntary manslaughter (imperfect self-defense),[3] involuntary manslaughter,[4] possession of an instrument of crime,[5] recklessly endangering another person,[6] and simple assault.[7] On October 15, 1999, following a jury trial, McKernan was convicted of reckless endangerment and simple assault.[8] Pursuant to these convictions, the trial court sentenced McKernan, among other things, to pay restitution in the amount of $5,190.00. The restitution was equal to the cost of the funeral expenses incurred by Gardner's estate.

¶ 4 On January 25, 2002, Gardner's estate and minor children filed a wrongful death and survival action against McKernan, alleging that McKernan had negligently and recklessly caused the death of Gardner. Subsequent thereto, on February 22, 2002, Brethren filed the instant declaratory judgment action[9] seeking a declaration that it was not obligated under its policy with McKernan to defend the wrongful death and survival action. By way of denying Brethren's motion for summary judgment, the trial court held that Brethren had a duty to defend and provide coverage to McKernan in the civil action.[10]

¶ 5 Eventually, the wrongful death and survival action was settled without exhausting the policy limits. The dispute currently before the Court arose when, on June 7, 2004, McKernan filed a counterclaim to Brethren's declaratory judgment complaint, seeking reimbursement for the funeral expenses McKernan paid pursuant to the restitution order entered by the trial court. On February 18, 2005, Brethren filed a motion for summary judgment with respect to McKernan's counterclaim, which the trial court granted on May 5, 2005. This timely appeal followed.

■ ¶ 6 On appeal, McKernan raises the following issues for our review:

1. Where the insurance company contracted to cover damages caused by the negligence of the insured, can it avoid the obligation simply because the insured paid for the damages (in this case the funeral of the injured person) to comply with a criminal sentence imposed on her for negligently injuring the victim?

. . .

■ Did the lower court err in holding that the liability insurer had no duty to repay the insured for the civil damages that she paid as part of a criminal restitution order following a conviction for negligently injuring a person, an occurrence

2. 18 Pa. Cons.Stat. Ann. § 2503(a)(1).

3. 18 Pa. Cons.Stat. Ann. § 2503(b).

4. 18 Pa. Cons.Stat. Ann. § 2504(a).

5. 18 Pa. Cons.Stat. Ann. § 907(a).

6. 18 Pa. Cons.Stat. Ann. § 2705.

7. 18 Pa. Cons.Stat. Ann. § 2701(a)(2).

8. As stated above, the simple assault conviction was under subsection (a)(2), which is based upon conduct which "negligently causes bodily injury to another with a deadly weapon." *Id.*

9. The action was filed pursuant to 42 Pa. Cons.Stat. Ann. §§ 7531–7541, the Declaratory Judgments Act.

10. The rationale behind the summary judgment motion was that Brethren was not responsible, under its policy, for McKernan's intentional conduct. However, the trial court correctly pointed out that McKernan's criminal convictions were based on negligent and reckless conduct. Therefore, the convictions did not conclusively trigger the exclusionary clause of the insurance contract which negated coverage for intentional conduct. Memorandum Opinion and Order, No. 02CV000094, May 12, 2004.

and damages covered under the contract?

Appellant's Brief, at 3. Reduced to their essence, both issues present the same question, namely, whether an insured may seek reimbursement against his insurer for a criminal restitution award resulting from a criminal prosecution. We conclude that Pennsylvania public policy mandates that Brethren, in the context of the instant declaratory judgment action, is not responsible for the court-ordered criminal restitution.

¶ 7 In arriving at this conclusion, we begin by examining the nature of the imposition of an order to pay criminal restitution. A sentencing court is statutorily mandated to order restitution to a victim pursuant to a criminal conviction. *See* 18 PA. CONS.STAT. ANN. § 1106(a). "[T]he primary purpose of the restitution statute is rehabilitative in nature." *Commonwealth v. Runion*, 541 Pa. 202, 210, 662 A.2d 617, 621 (1995). As a result, this Court has repeatedly held that an order of restitution is not equivalent to an award of civil damages. *See, e.g., In re B.T.C.*, 868 A.2d 1203, 1205 (Pa.Super.2005); *Commonwealth v. Kerr*, 298 Pa.Super. 257, 444 A.2d 758, 760 (1982); *Commonwealth v. Erb*, 286 Pa.Super. 65, 428 A.2d 574, 580–581 (1981). "While the order aids the victim, its true purpose, and the reason for its imposition, is the rehabilitative goal it serves by impressing upon the offender the loss he has caused and his responsibility to repair that loss as far as it is possible to do so." *Erb*, 428 A.2d at 581, *quoting State v. Stalheim*, 275 Or. 683, 689, 552 P.2d 829, 832 (1976).

¶ 8 Clearly, then, an order of criminal restitution is imposed for its effect on the defendant. It is meant to help rehabilitate a convict by impressing upon him, in some degree, the scope of the damage inflicted by his criminal conduct. The proposition that a third party insures against the ordered criminal restitution would defeat this purpose entirely. In fact, it could increase the likelihood of criminal conduct by transferring the responsibility of a restitution order, *i.e.*, the ramifications of criminal conduct, to an insurance provider. Any rehabilitative effect, not to mention deterrence, would thus be negligible.[11]

¶ 9 Furthermore, we agree with the reasoning of our sister state, as expressed by the Court of Appeals of Maryland, that finding coverage under these circumstances would place an insurer in a position where it could not vindicate its own rights under the insurance policy:

> The insurer cannot exercise its right to defend, to choose defense counsel, or to settle the action. [Concluding that impositions of criminal restitutions are equivalent to civil awards] would impose liability on the part of the insurer without affording it any of its contractual rights under the policy.

*Grey v. Allstate Ins. Co.*, 363 Md. 445, 468, 769 A.2d 891, 905 (2001).

¶ 10 We conclude that neither of the parties intended the instant insurance policy to allow Brethren to select criminal defense counsel for McKernan, nor that Brethren would have the authority to participate in plea negotiations. In this regard, if Brethren were forced to pay the restitution order, it would bear the burden of financial coverage without any of the safeguards that the policy affords it.

¶ 11 Accordingly, we hold that a convict, in the context of the criminal liti-

---

11. In the words of our distinguished former colleague and President Judge, Edmund B. Spaeth, Jr., the point of restitution is to impress upon the defendant "the cruelty of his conduct, and deterred from repeating it, and encouraged to live in a responsible way." *Erb*, 428 A.2d at 581.

gation, cannot utilize a policy of insurance to cover a restitution order. As such, the policy in the case *sub judice*, which would have covered the funeral expenses had they been included in the civil settlement, nonetheless cannot be construed to cover McKernan's court-imposed criminal restitution. This decision should not in any way be interpreted as affecting the law regarding insurance coverage available in civil actions based upon conduct which creates civil as well as criminal responsibility.[12]

¶ 12 Order affirmed.

---

**12.** As a corollary, a defendant, as part of a sentencing scheme, can be directed to make restitution to a victim injured by the defendant's conduct, even though the victim has already been paid through a civil settlement or when the victim receives compensation from the victim's insurer for the loss sustained. *See Runion*, 541 Pa. at 209, 662 A.2d at 620, *citing Kerr*, 444 A.2d at 760; *In re B.T.C.*, 868 A.2d at 1205.